COMMONWEALTH *vs.* THOMAS SPERRAZZA.

Suffolk.    May 2, 1977. — June 2, 1977.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, & LIACOS, JJ.

*Practice, Criminal,* New trial.    *Conflict of Interest.    Firearms.*

Where the prosecutor in a murder trial learned only one day before a prosecution witness was to testify that the witness had changed his story and would not testify as indicated in a statement of proposed testimony furnished to defense counsel, the prosecutor's failure to inform defense counsel of the change did not require a new trial. [669-670]
Evidence at the trial of an indictment charging unlawful carrying of a firearm warranted a finding that the gun carried by the defendant was a weapon with a barrel less than sixteen inches long. [670]

INDICTMENTS found and returned in the Superior Court on July 9, 1975.

The cases were tried before *Lynch, J.*

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Richard H. Gens* for the defendant.

*Philip T. Beauchesne,* Assistant District Attorney, for the Commonwealth.

BRAUCHER, J.   The defendant was indicted for murder, assault with intent to murder while armed, and unlawfully carrying a firearm on his person. Convicted of murder in the second degree and of the assault and firearm charges, he was sentenced to life imprisonment on the murder conviction, a concurrent eighteen to twenty years on the assault charge, and four to five years, from and after the life imprisonment, on the firearm charge. His motion for a new trial was denied. On appeal, he argues two assignments of error: (1) that a new trial should have been ordered because the Commonwealth failed to apprise the defendant of a change in the testimony of a prosecution witness, and (2) the defendant's motion for a directed verdict on the firearm charge should have been allowed because there was no evidence that the barrel of the handgun was less than sixteen inches in length. We affirm the judgments.

There was evidence of the following facts. Between 9 and 10 P.M. on February 21, 1975, there was a confrontation in a Roslindale bar between Anthony DeVingo and the defendant, who was accompanied by a female companion known to DeVingo. Later, in response to a message from the female companion, DeVingo went to the door of the bar. He was followed by others, including the victim. In front of the bar he met the defendant and his female companion. The defendant took a step back and drew a gun, DeVingo kicked at him, and the defendant fired a shot. DeVingo received a superficial gunshot wound to the chest and the victim was killed by a wound from a bullet which entered his mouth, severed his spinal cord, and ex-

ited at the back of his neck. Shortly after the defendant fired, another man came running from across the street and fired three or four shots. The defendant, his female companion and the other man left in a Cadillac automobile parked across the street, and a bystander reported the license number of the Cadillac to the police. Only one bullet, .38 caliber, was found in the area, lodged in the frame of the doorway.

1. *The motion for a new trial.* Before trial the Commonwealth stated its intention to call Clifford Kast and Miles Conner as witnesses. Defense counsel told the judge that Conner was a client of his, and the prosecutor said that he would use Kast and Conner to trace the Cadillac to the defendant's possession. Statements of their proposed testimony were furnished to defense counsel. The statements indicated that Kast would testify that he registered the Cadillac at the defendant's request and on February 20, 1975, lent it to Conner; Conner would testify that on February 21, 1975, he had possession of the car in western Massachusetts.

At trial Kast testified that he registered the car for the defendant on February 20, 1975, and that he never saw the car. On cross-examination he testified that he had lied to the police about having seen the car. Defense counsel now contends that he relied on the Kast statement furnished to him, that he was not told that Kast would change his story, and that Kast's testimony at trial placed him in a situation involving conflict of interest: either he had to call as a witness his own client, Conner, or he had to abandon the contention that the defendant was a victim of mistaken identification. He cites *Commonwealth* v. *Geraway*, 364 Mass. 168, 174 (1973).

The prosecutor represented that he learned of Kast's change of story either the day Kast testified or the day before. This was after the first week of trial, and the Commonwealth did not rest until the day after Kast testified. The Commonwealth now contends that there was no duty to disclose Kast's change of story, that there is no indication that failure to disclose affected the conduct of the

trial, that Kast's testimony was cumulative on the issue of the identification of the defendant, that the possible conflict of interest was hypothetical, and that defense counsel's decision to abandon the issue of mistaken identification was essentially tactical.

We need not rule on all these contentions. It is sufficient that the defendant does not present and we do not see any possibility that the disclosure of Kast's change of story to defense counsel a day earlier could have helped the defendant's case. There was no abuse of discretion in the denial of the motion for a new trial.

2. *The length of the firearm.* The indictment on the firearm charge alleged that the length of the barrel was less than sixteen inches. See G. L. c. 140, § 121; c. 269, § 10 (*a*). Whether a gun is a "firearm" as defined is a question of fact for the jury. *Commonwealth* v. *Bartholomew,* 326 Mass. 218, 222 (1950). The defendant contends that there was no evidence as to the length of the barrel. We disagree. DeVingo testified that he saw the defendant "reach in back of his coat and draw a revolver," that it was a "handgun" and was "sort of large, dark — black, I think it was." Another witness referred to it as a "handgun." A ballistics expert testified that the fact that no shell casings had been found indicated that a revolver had been used.

In ordinary usage a revolver is a species of pistol or handgun; all are short firearms. We think the jury could conclude beyond a reasonable doubt that the gun in question was not a weapon with a barrel sixteen inches long or longer.

3. *Section 33E.* In accordance with our duty under G. L. c. 278, § 33E, we have reviewed the entire record and find no reason to change the ultimate outcome.

*Judgments affirmed.*