# SMITH *v.* MASSACHUSETTS

No. 03–8661.   Argued December 1, 2004—Decided February 22, 2005

SCALIA, J., delivered the opinion of the Court, in which STEVENS, O'CONNOR, SOUTER, and THOMAS, JJ., joined. GINSBURG, J., filed a dissenting opinion, in which REHNQUIST, C. J., and KENNEDY and BREYER, JJ., joined, *post*, p. 475.

*David Nathanson* argued the cause and filed briefs for petitioner.

*Cathryn A. Neaves*, Assistant Attorney General of Massachusetts, argued the cause for respondent. With her on the brief were *Thomas F. Reilly*, Attorney General, *Dean A. Mazzone* and *Joseph M. Ditkoff*, Special Assistant Attorneys General, and *David M. Lieber*, Assistant Attorney General.

*Sri Srinivasan* argued the cause for the United States as *amicus curiae* urging affirmance. With him on the brief were *Acting Solicitor General Clement*, *Assistant Attorney General Wray*, and *Deputy Solicitor General Dreeben*.*

---

*\*Andrew H. Schapiro* and *Pamela Harris* filed a brief for the National Association of Criminal Defense Lawyers as *amicus curiae* urging reversal.

Briefs of *amici curiae* urging affirmance were filed for the State of Idaho et al. by *Lawrence G. Wasden*, Attorney General of Idaho, and *Kenneth K. Jorgensen, Lori A. Fleming*, and *Jessica M. Borup*, Deputy Attor-

JUSTICE SCALIA delivered the opinion of the Court.

Midway through a jury trial, the judge acquitted petitioner of one of the three offenses charged. The question presented in this case is whether the Double Jeopardy Clause forbade the judge to reconsider that acquittal later in the trial.

I

Petitioner Melvin Smith was tried before a jury in the Superior Court of Suffolk County, Massachusetts, on charges relating to the shooting of his girlfriend's cousin. The indictments charged three counts: armed assault with intent to murder; assault and battery by means of a dangerous weapon; and unlawful possession of a firearm. The "firearm" element of the last offense requires proof that the weapon had a barrel "less than 16 inches" in length. See Mass. Gen. Laws Ann., ch. 140, § 121 (West 2002) (definition of "firearm"); ch. 269, § 10(a) (West 2000). The indictment in petitioner's case so charged. Petitioner's girlfriend was tried before the same jury as an accessory after the fact.

neys General, *Troy King*, Attorney General of Alabama, *Gregg D. Renkes*, Attorney General of Alaska, *Terry Goddard*, Attorney General of Arizona, *M. Jane Brady*, Attorney General of Delaware, *Mark J. Bennett*, Attorney General of Hawaii, *Lisa Madigan*, Attorney General of Illinois, *Tom Miller*, Attorney General of Iowa, *Mike McGrath*, Attorney General of Montana, *Jon Bruning*, Attorney General of Nebraska, *Brian Sandoval*, Attorney General of Nevada, *Kelly A. Ayotte*, Attorney General of New Hampshire, *Wayne Stenehjem*, Attorney General of North Dakota, *Jim Petro*, Attorney General of Ohio, *W. A. Drew Edmondson*, Attorney General of Oklahoma, *Hardy Myers*, Attorney General of Oregon, *Gerald J. Pappert*, Attorney General of Pennsylvania, *Patrick C. Lynch*, Attorney General of Rhode Island, *Mark L. Shurtleff*, Attorney General of Utah, *William H. Sorrell*, Attorney General of Vermont, *Jerry W. Kilgore*, Attorney General of Virginia, and *William E. Thor*, State Solicitor General, and *Darrell V. McGraw, Jr.*, Attorney General of West Virginia; and for the Criminal Justice Legal Foundation by *Kent S. Scheidegger* and *Charles L. Hobson*.

The victim testified at trial that petitioner had shot him with "a pistol," specifically "a revolver" that "appeared to be a .32 or a .38." App. 12, 14. The prosecution introduced no other evidence about the firearm.

At the conclusion of the prosecution's case, petitioner moved for a required finding of not guilty on the firearm count, see Mass. Rule Crim. Proc. 25(a) (2002), in part because the Commonwealth had not proved that the gun barrel was less than 16 inches. At sidebar, after hearing argument from the prosecutor, the trial judge granted the motion, reasoning that there was "not a scintilla of evidence" that petitioner had possessed a weapon with a barrel length of less than 16 inches. App. 21. The trial court marked petitioner's motion with the handwritten endorsement "Filed and after hearing, Allowed," and the allowance of the motion was entered on the docket. Consolidated Brief and Record Appendix for Defendant in No. 00–P–1215 (Mass. App. Ct.), p. A.21; App. 3. The sidebar conference then concluded, and the prosecution rested.[1] The judge did not notify the jury of petitioner's acquittal on the firearm count.

The defense case then proceeded. Petitioner's codefendant presented one witness, and both defendants then rested. During the short recess before closing arguments, the prosecutor brought to the court's attention a Massachusetts precedent under which (he contended) the victim's testimony about the kind of gun sufficed to establish that the barrel was shorter than 16 inches. He requested that the court defer ruling on the sufficiency of the evidence until after the jury verdict. The judge agreed, announcing orally that she was "reversing" her previous ruling and allowing the firearm-possession count to go to the jury. *Id.*, at 75. Cor-

---

[1] Although, before the judge ruled, the prosecutor had said that he would "be requesting to reopen and allow [the victim] to testify to" the barrel length, App. 22, he made no motion to reopen before resting his case.

responding notations were made on the original of petitioner's motion and on the docket.

The jury convicted petitioner on all three counts, though it acquitted his codefendant of the accessory charge. Petitioner then submitted to a bench trial on an additional repeat-offender element of the firearm-possession charge; the judge found him guilty. Petitioner received a sentence of 10 to 12 years' incarceration on the firearm-possession charge, concurrent with his sentence on the other counts.

Petitioner sought review in the Appeals Court of Massachusetts. That court affirmed, holding that the Double Jeopardy Clause was not implicated because the trial judge's correction of her ruling had not subjected petitioner to a second prosecution or proceeding. It also rejected petitioner's argument that the trial judge's initial ruling was final because Massachusetts Rule of Criminal Procedure 25(a) required the judge to decide petitioner's motion when it was made, without reserving decision;[2] the court reasoned that the Rule does not preclude the judge from reconsidering. 58 Mass. App. 166, 170–171, 788 N. E. 2d 977, 982–983 (2003).

The Supreme Judicial Court of Massachusetts denied further appellate review. 440 Mass. 1104, 797 N. E. 2d 380 (2003). We granted certiorari. 542 U. S. 903 (2004).

## II

Although the common-law protection against double jeopardy historically applied only to charges on which a jury had rendered a verdict, see, *e. g.,* 2 M. Hale, Pleas of the Crown

---

[2] The Rule provides in pertinent part:

"The judge on motion of a defendant or on his own motion shall enter a finding of not guilty of the offense charged in an indictment or complaint or any part thereof after the evidence on either side is closed if the evidence is insufficient as a matter of law to sustain a conviction on the charge. *If a defendant's motion for a required finding of not guilty is made at the close of the Commonwealth's evidence, it shall be ruled upon at that time."* (Emphasis added.)

*246, we have long held that the Double Jeopardy Clause of the Fifth Amendment prohibits reexamination of a court-decreed acquittal to the same extent it prohibits reexamination of an acquittal by jury verdict. See *Richardson* v. *United States*, 468 U. S. 317, 325, n. 5 (1984); *Sanabria* v. *United States*, 437 U. S. 54, 64, n. 18 (1978); *United States* v. *Martin Linen Supply Co.*, 430 U. S. 564, 573 (1977); *United States* v. *Sisson*, 399 U. S. 267, 290 (1970). This is so whether the judge's ruling of acquittal comes in a bench trial or, as here, in a trial by jury. See *Fong Foo* v. *United States*, 369 U. S. 141, 143 (1962) *(per curiam)*; *Sanabria, supra*, at 77–78; *Martin Linen, supra*, at 565–566, 574–575.

Our cases have made a single exception to the principle that acquittal by judge precludes reexamination of guilt no less than acquittal by jury: When a jury returns a verdict of guilty and a trial judge (or an appellate court) sets aside that verdict and enters a judgment of acquittal, the Double Jeopardy Clause does not preclude a prosecution appeal to reinstate the jury verdict of guilty. *United States* v. *Wilson*, 420 U. S. 332, 352–353 (1975). But if the prosecution has not yet obtained a conviction, further proceedings to secure one are impermissible: "[S]ubjecting the defendant to postacquittal factfinding proceedings going to guilt or innocence violates the Double Jeopardy Clause." *Smalis* v. *Pennsylvania*, 476 U. S. 140, 145 (1986).

When the judge in this case first granted petitioner's motion, there had been no jury verdict. Submission of the firearm count to the jury plainly subjected petitioner to further "factfinding proceedings going to guilt or innocence," prohibited by *Smalis* following an acquittal. The first question, then, is whether the judge's initial ruling on petitioner's motion was, in fact, a judgment of acquittal.

It certainly appeared to be. Massachusetts Rule of Criminal Procedure 25(a) directs the trial judge to enter a finding of not guilty "if the evidence is insufficient as a matter of law to sustain a conviction." An order entering such a finding

thus meets the definition of acquittal that our double-jeopardy cases have consistently used: It "actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged." *Martin Linen, supra,* at 571; accord, *e. g., Price* v. *Vincent,* 538 U. S. 634, 640 (2003); *Burks* v. *United States,* 437 U. S. 1, 10 (1978).

The Commonwealth contends that the grant of a motion for a required finding of not guilty in a jury trial is a purely legal determination, the factfinding function being reserved to the jury. Brief for Respondent 14 (citing *Commonwealth* v. *Lowder,* 432 Mass. 92, 96–97, 731 N. E. 2d 510, 515 (2000)). Thus, the Commonwealth reasons, jeopardy did not terminate midtrial on any of the three counts, since neither judge nor jury had rendered a factual determination that would bring jeopardy to an end. We rejected identical reasoning in *Martin Linen, supra,* holding that jeopardy ends when, following discharge of a hung jury, a judge grants a motion for judgment of acquittal under Federal Rule of Criminal Procedure 29. Rule 29 created the judge-ordered "judgment of acquittal" in place of the directed verdict, which was at least fictionally returned by the jury at the judge's direction, rather than coming from the judge alone. But, we said in *Martin Linen,* change in nomenclature and removal of the jury's theoretical role make no difference; the Rule 29 judgment of acquittal is a substantive determination that the prosecution has failed to carry its burden. Thus, even when the jury is the *primary* factfinder, the trial judge still resolves elements of the offense in granting a Rule 29 motion in the absence of a jury verdict. See *Martin Linen, supra,* at 571–575.

The same is true here. (Indeed, Massachusetts patterned its Rule 25 on Federal Rule 29 and adopted prior directed-verdict practice without change. See *Lowder, supra,* at 95, 731 N. E. 2d, at 514.) Massachusetts' characterization of the required finding of not guilty as a legal rather than factual determination is, "as a matter of double jeopardy law, . . .

not binding on us," *Smalis, supra*, at 144, n. 5; what matters is that, as the Massachusetts Rules authorize, the judge "evaluated the [Commonwealth's] evidence and determined that it was legally insufficient to sustain a conviction." *Martin Linen, supra*, at 572.

## III

· Having concluded that the judge acquitted petitioner of the firearm-possession charge,[3] we must turn to the more difficult question whether the Double Jeopardy Clause permitted her to reconsider that acquittal once petitioner and his codefendant had rested their cases.[4]

---

[3] It is of no moment that jeopardy continued on the two assault charges, for which the jury remained empaneled. Double-jeopardy analysis focuses on the individual "offence" charged, U. S. Const., Amdt. 5, and our cases establish that jeopardy may terminate on some counts even as it continues on others. See, *e. g., Price* v. *Georgia*, 398 U. S. 323, 329 (1970).

[4] The dissent emphasizes that the acquittal was reconsidered "before the court of first instance ha[d] disassociated itself from the case or any issue in it," whereas in *Smalis* v. *Pennsylvania*, 476 U. S. 140 (1986), the government sought reconsideration by appealing. *Post*, at 477–478 (opinion of GINSBURG, J.). That distinction is not a relevant one. *Smalis* squarely held, not that further factfinding proceedings were barred because there had been an appeal, but that appeal was barred because further factfinding proceedings before the trial judge (the factfinder who had pronounced the acquittal) were impermissible. 476 U. S., at 145. Likewise, we recognized in *Justices of Boston Municipal Court* v. *Lydon*, 466 U. S. 294 (1984), that in a "two-tier" trial system amounting to "'a single, continuous course of judicial proceedings,'" acquittal at the first stage cannot be reconsidered later in the two-tier process. *Id.*, at 309, 312. These cases establish that an acquittal, once final, may not be reconsidered on appeal or otherwise.

The dissent misses the point of *Swisher* v. *Brady*, 438 U. S. 204 (1978), which found no double-jeopardy bar to a judge's review of a master's findings. This was not a "recogni[tion of] the distinction between appeals and continuing proceedings before the initial tribunal," *post*, at 478, but rather a recognition that the initial jeopardy does not end until there is a *final* decision. See 438 U. S., at 216 ("[I]t is for the State, not the parties, to designate and empower the factfinder and adjudicator. And here

It is important to note, at the outset, that the facts of this case gave petitioner no reason to doubt the finality of the state court's ruling. The prosecutor did not make or reserve a motion for reconsideration, or seek a continuance that would allow him to provide the court with favorable authority. Rather, the sidebar conference concluded, the court asked the prosecutor if he had "any further evidence," and he replied, "No. At this point, the Commonwealth rests their case." App. 22. Nor did the court's ruling appear on its face to be tentative. The trial court was not permitted by Massachusetts procedure to defer ruling on petitioner's motion, Mass. Rule Crim. Proc. 25(a), or to require the defendants to go forward with their cases while the prosecution reserved the right to present more evidence, *Commonwealth v. Cote*, 15 Mass. App. 229, 242, 444 N. E. 2d 1282, 1290–1291 (1983). And when the prosecutor suggested that he be given a chance to reopen his case before the defendants proceeded, the court rejected the suggestion because it was time to rule on petitioner's motion. App. 22; n. 1, *supra.*

Was this apparently final ruling in fact final? We think, and petitioner does not dispute, see Tr. of Oral Arg. 5, that as a general matter state law may prescribe that a judge's midtrial determination of the sufficiency of the State's proof can be reconsidered. Cf. *Pennsylvania* v. *Goldhammer*, 474 U. S. 28, 30 (1985) *(per curiam)* (state law regarding appealability may affect defendant's expectation that a sentence is final for double-jeopardy purposes). We can find no instance in which a State has done this by statute or rule, but some

Maryland has conferred those roles only on the Juvenile Court judge. Thus, regardless of which party is initially favored by the master's proposals, . . . the judge is empowered to accept, modify, or reject those proposals"). The dissent is quite right that the taking of an appeal "necessarily signals" the finality of the order appealed, *post,* at 477; that does not establish, however, that the absence of an appeal necessarily connotes the nonfinality that differentiates the master's finding in *Swisher* from the midtrial acquittal in this case.

state courts have held, as a matter of common law or in the exercise of their supervisory power, that a court-directed judgment of acquittal is not effective until it is signed and entered in the docket, *Harden* v. *State*, 160 Ga. App. 514, 515, 287 S. E. 2d 329, 331 (1981), until a formal order is issued, *State* v. *Collins*, 112 Wash. 2d 303, 308–309, 771 P. 2d 350, 353 (1989), or until the motion hearing is concluded, *Watson* v. *State*, 410 So. 2d 207, 209 (Fla. App. 1982).

At the time of petitioner's trial, however, Massachusetts had not adopted any such rule of nonfinality. Its Rules of Criminal Procedure provided that only *clerical* errors in a judgment or order, or errors "arising from oversight or omission," were subject to correction at any time. Mass. Rule Crim. Proc. 42 (2002). Massachusetts cites a few commonwealth cases supporting the general proposition that interlocutory rulings (rulings on pretrial motions, evidentiary rulings, and the like) are subject to reconsideration. But it is far from obvious that this principle extends to entry of a required finding of not guilty under Rule 25 (or to its common-law predecessor, the directed verdict)—which on its face, at least, purports not to be interlocutory but to end the case. We think much more was required here.

It may suffice for an appellate court to announce the state-law rule that midtrial acquittals are tentative in a case where reconsideration of the acquittal occurred at a stage in the trial where the defendant's justifiable ignorance of the rule could not possibly have caused him prejudice.[5] But when, as here, the trial has proceeded to the defendant's

---

[5] In *Price* v. *Vincent*, 538 U. S. 634 (2003), a habeas case presenting facts similar to those here, the judge granted a partial acquittal but reconsidered before the trial proceeded, and the Michigan courts concluded that no double-jeopardy violation had occurred. *Id.*, at 637–638. We held that conclusion to be not "an unreasonable application of . . . Federal law," 28 U. S. C. § 2254(d)(1), in part because, as the Michigan Supreme Court observed, "no trial proceedings took place with respondent laboring under the mistaken impression that he was not facing the possibility of conviction for" the purportedly acquitted charge. 538 U. S., at 642–643, and n. 1.

presentation of his case, the possibility of prejudice arises. The seeming dismissal may induce a defendant to present a defense to the undismissed charges when he would be better advised to stand silent. Many jurisdictions still follow the traditional rule that after trial or on appeal, sufficiency-of-the-evidence challenges are reviewed on the basis of the *entire* trial record, even if the defendant moved for acquittal when the prosecution rested and the court erroneously denied that motion. *E. g., Smith* v. *State,* 509 P. 2d 1391, 1397 (Okla. Crim. App. 1973); *Deal* v. *State,* 657 P. 2d 404, 405 (Alaska App. 1983) *(per curiam).* See generally Comment, The Motion for Acquittal: A Neglected Safeguard, 70 Yale L. J. 1151, 1152–1158 (1961). In these jurisdictions, the defendant who puts on a case runs "the risk that . . . he will bolster the Government case enough for it to support a verdict of guilty." *McGautha* v. *California,* 402 U. S. 183, 215 (1971). The defendant's evidence "may lay the foundation for otherwise inadmissible evidence in the Government's initial presentation or provide corroboration for essential elements of the Government's case." *United States* v. *Calderon,* 348 U. S. 160, 164, n. 1 (1954) (citation omitted). In all jurisdictions, moreover, false assurance of acquittal on one count may induce the defendant to present defenses to the remaining counts that are inadvisable—for example, a defense that entails admission of guilt on the acquitted count.[6]

---

[6] In multiple-defendant cases like this one, an apparent final dismissal of one defendant may also cause the others to alter their cases in harmful ways. They would, for example, proceed under the mistaken belief that they need no longer fear the acquitted defendant's assertion of a defense antagonistic to their own, and might assume that the acquitted defendant would become available as a defense witness. Cf. *Washington* v. *Texas,* 388 U. S. 14, 22–23 (1967) (discussing reasons to allow testimony of a purported accomplice after accomplice's acquittal). While the potential effect upon codefendants has no bearing upon this petitioner's double-jeopardy claim, it does confirm the wisdom of the rule we adopt.

The Double Jeopardy Clause's guarantee cannot be allowed to become a potential snare for those who reasonably rely upon it. If, after a facially unqualified midtrial dismissal of one count, the trial has proceeded to the defendant's introduction of evidence, the acquittal must be treated as final, unless the availability of reconsideration has been plainly established by pre-existing rule or case authority expressly applicable to midtrial rulings on the sufficiency of the evidence. That requirement was not met here. The Commonwealth has failed to show that under state procedure as it existed at the time of petitioner's trial, the trial court's ruling on the motion for a required finding of not guilty was automatically, or even presumptively, nonfinal. At most it has shown that the ruling was wrong because the Commonwealth's evidence was, as a matter of law, sufficient—a point that the dissent emphasizes, echoing the opinion below. See *post*, at 476–477, 479. But any contention that the Double Jeopardy Clause must itself (even absent provision by the State) leave open a way of correcting legal errors is at odds with the well-established rule that the bar will attach to a preverdict acquittal that is patently wrong in law. See, *e. g.,* *Smalis*, 476 U. S., at 144, n. 7; *Sanabria*, 437 U. S., at 68–69, 75, 78; *Martin Linen*, 430 U. S., at 571; *Fong Foo*, 369 U. S., at 143.[7]

---

[7] The dissent goes to great lengths to establish that there was no prejudice here, since the acquittal was legally wrong and the defendant was deprived of no available defense. See *post*, at 476–480. But the Double Jeopardy Clause has never required prejudice beyond the very exposure to a second jeopardy. To put it differently: Requiring someone to defend against a charge of which he has already been acquitted is prejudice *per se* for purposes of the Double Jeopardy Clause—even when the acquittal was erroneous because the evidence was sufficient. See, *e. g., Sanabria* v. *United States*, 437 U. S. 54, 77–78 (1978). Of course it is not even clear that the dissent's due-process analysis would acknowledge prejudice when a midtrial acquittal was correct when rendered, so long as evidence sufficient to sustain the charge was eventually introduced (after the acquittal and during the defendant's case, see *supra*, at 472). Our double-jeopardy cases make clear that an acquittal bars the prosecution from seeking "an-

Massachusetts argues that if the Double Jeopardy Clause does not allow for reconsideration, every erroneous grant of a directed-verdict motion will be unremediable, even one attributable to mistaken expression that is promptly corrected. We think not. Double-jeopardy principles have never been thought to bar the immediate repair of a genuine error in the announcement of an acquittal, even one rendered by a jury. See M. Friedland, Double Jeopardy 61 (1969); *King* v. *Parkin*, 1 Mood. 45, 46–47, 168 Eng. Rep. 1179, 1180 (1824). And of course States can protect themselves still further against the "occasional errors" of law that the dissent thinks "inevitabl[e]" in the course of trial, *post*, at 478, by rendering midtrial acquittals nonfinal. (Massachusetts, as we have observed, has specifically provided for the correction of mistaken utterances or scrivener's errors, but not for the reconsideration of legal conclusions. See Mass. Rule Crim. Proc. 42 (2002).)

Prosecutors are not without protection against ill-considered acquittal rulings. States can and do craft procedural rules that allow trial judges "the maximum opportunity to consider with care a pending acquittal motion," *Martin Linen, supra*, at 574, including the option of deferring consideration until after the verdict. See, *e. g.*, D. C. Super. Ct. Crim. Proc. Rule 29(b) (2003); N. Y. Crim. Proc. Law Ann. § 290.10(1)(b) (West 2002); W. Va. Rule Crim. Proc. 29(b) (2004). (At least one State has altogether precluded midtrial acquittals by the court. See Nev. Rev. Stat. Ann. § 175.381(1) (2001).) Moreover, a prosecutor can seek to persuade the court to correct its legal error before it rules, or at least before the proceedings move forward. See *Price* v. *Vincent*, 538 U. S., at 637–638, 642–643, and n. 1. Indeed, the prosecutor in this case convinced the judge to reconsider her acquittal ruling on the basis of legal authority he had obtained during a 15-minute recess before closing argu-

other opportunity to supply evidence which it failed to muster" before jeopardy terminated. *Burks* v. *United States*, 437 U. S. 1, 11 (1978).

ments.  See App. 71–72, 74.  Had he sought a short continuance at the time of the acquittal motion, the matter could have been resolved satisfactorily before petitioner went forward with his case.

*     *     *

The judgment of the Appeals Court of Massachusetts is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*

JUSTICE GINSBURG, with whom THE CHIEF JUSTICE, JUSTICE KENNEDY, and JUSTICE BREYER join, dissenting.

Does the Double Jeopardy Clause bar the States from allowing trial judges to reconsider a midtrial grant of a motion to acquit on one or more but fewer than all counts of an indictment?  The Court unanimously answers "No."  See *ante*, at 470 ("[A]s a general matter state law may prescribe that a judge's midtrial determination of the sufficiency of the State's proof can be reconsidered.").  A State may provide for such reconsideration, the Court also recognizes, by legislation or by judicial rule, common-law decision, or exercise of supervisory power.  See *ante*, at 470–471.  According to the Appeals Court of Massachusetts, the Commonwealth has so provided through its decisional law.  58 Mass. App. 166, 171, 788 N. E. 2d 977, 983 (2003); see *Commonwealth* v. *Haskell*, 438 Mass. 790, 792, 784 N. E. 2d 625, 628 (2003) ("A judge's power to reconsider his own decisions during the pendency of a case is firmly rooted in the common law . . . .").  The view held by the Massachusetts court on this issue is hardly novel.  See, *e. g.*, *United States* v. *LoRusso*, 695 F. 2d 45, 53 (CA2 1982) ("A district court has the inherent power to reconsider and modify its interlocutory orders prior to the entry of judgment . . . ."); cf. Fed. Rule Civ. Proc. 54(b) (Absent "entry of a final judgment as to one or more but fewer than all of the claims or parties," "any order or other form of decision, however designated, which adjudicates fewer

than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.").

Nevertheless, the trial court here was locked into its on-the-spot error, the Court maintains, because "the availability of reconsideration [had not] been plainly established by pre-existing rule or case authority expressly applicable to midtrial rulings on the sufficiency of the evidence." *Ante,* at 473. Otherwise, according to the Court, "[t]he Double Jeopardy Clause's guarantee [would] become a potential snare for those who reasonably rely upon it." *Ibid.*

I agree that, as a trial unfolds, a defendant must be accorded a timely, fully informed opportunity to meet the State's charges. I would so hold as a matter not of double jeopardy, but of due process. See *Gray* v. *Netherland,* 518 U. S. 152, 171 (1996) (GINSBURG, J., dissenting) ("Basic to due process in criminal proceedings is the right to a full, fair, potentially effective opportunity to defend against the State's charges."). On the facts presented here, however, as the Massachusetts Appeals Court observed, see 58 Mass. App., at 171, 788 N. E. 2d, at 983, defendant-petitioner Smith suffered no prejudice fairly attributable to the trial court's error.

The trial judge in Smith's case acted impatiently and made a mistake at the close of the Commonwealth's case. Cutting short the prosecutor's objections, see App. 20–22, she granted Smith's motion for a "required finding of not guilty" on one of the three charges contained in the indictment, unlawful possession of a firearm, *id.,* at 20.[1] She did so on the ground that the Commonwealth had failed to prove an essen-

---

[1] The other charges, on which no motion to acquit was made, were assault with intent to murder, and assault and battery by means of a dangerous weapon.

tial element of the crime, *i. e.*, that the barrel of the gun Smith was charged with possessing was less than 16 inches. See Mass. Gen. Laws Ann., ch. 269, § 10(a) (West 2000) (rendering possession of a "firearm," unless exempted, unlawful); ch. 140, § 121 (West 2002) (defining "firearm" as a "pistol" or "revolver" with a barrel length "less than 16 inches"). The ruling for Smith was endorsed on the motion and recorded on the docket, but it was not communicated to the jury.

The trial judge corrected her error the same day it was made. She did so in advance of closing arguments and her charge to the jury. See App. 71–74. The trial judge retracted her initial ruling and denied the motion for a required finding of not guilty because the prosecutor had called to her attention a decision of the Supreme Judicial Court of Massachusetts directly on point, *Commonwealth* v. *Sperrazza*, 372 Mass. 667, 363 N. E. 2d 673 (1977). In that case, Massachusetts' highest court held that a jury may infer a barrel length of less than 16 inches from testimony that the weapon in question was a revolver or handgun. *Id.*, at 670, 363 N. E. 2d, at 675. Here, there was such testimony. The victim in Smith's case had testified that the gun he saw in the defendant's hand was a ".32 or .38" caliber "pistol." App. 12. The trial court's new ruling based on *Sperrazza* was entered on the docket, Smith did not move to reopen the case, and the jury convicted him on all charges.

Smith urges that our decision in *Smalis* v. *Pennsylvania*, 476 U. S. 140 (1986), controls this case. I disagree. In *Smalis*, the Court held that the Double Jeopardy Clause bars appellate review of a trial court's grant of a motion to acquit, because reversal would lead to a remand for further trial proceedings. *Id.*, at 146. An appeal, including an interlocutory appeal, moves a case from a court of first instance to an appellate forum, and necessarily signals that the trial court has ruled with finality on the appealed issue or issues. A trial court's reconsideration of its initial decision to grant a motion, on the other hand, occurs before the court of first

instance has disassociated itself from the case or any issue in it. Trial courts have historically revisited midtrial rulings, as earlier noted, see *supra*, at 475–476, for the practical exigencies of trial mean that judges inevitably will commit occasional errors. In contrast, the government traditionally could pursue no appeal at any stage of a criminal case, however mistaken the trial court's prodefense ruling. See *United States* v. *Scott*, 437 U. S. 82, 84–86 (1978) (discussing the evolution of the Government's right to appeal). This Court has long recognized the distinction between appeals and continuing proceedings before the initial tribunal prior to the rendition of a final adjudication. Compare Fed. Rule Civ. Proc. 54(b), quoted *supra*, at 475–476, and *Swisher* v. *Brady*, 438 U. S. 204, 215–216 (1978) (no double jeopardy bar to the State's exceptions to a master's findings where an accused juvenile "is subjected to a single proceeding which begins with a master's hearing and culminates with an adjudication by a judge"), with *Kepner* v. *United States*, 195 U. S. 100, 133 (1904) (Double Jeopardy Clause bars the Government's appeal to a higher court after acquittal of the defendant by the "court of first instance").

Nor is Massachusetts Rule of Criminal Procedure 25(a) (2002) dispositive here. That Rule states: "If a defendant's motion for a required finding of not guilty is made at the close of the Commonwealth's evidence, *it shall be ruled upon at that time*." (Emphasis added.) While Rule 25(a) plainly instructs an immediate ruling on the motion, it says nothing about reconsideration.

The Appeals Court of Massachusetts determined that Rule 25(a) did not place the incorrect midtrial ruling beyond the trial court's capacity to repair its error. Rule 25(a)'s demand for an immediate ruling rather than reservation of the question,[2] the Appeals Court said, "protects a defendant's right

---

[2] Cf. Fed. Rule Crim. Proc. 29(b) (providing that a trial court may reserve decision on a defendant's challenge to the sufficiency of the evidence

to insist that the Commonwealth present proof of every element of the crime with which he is charged before he decides whether to rest or to introduce proof." 58 Mass. App., at 171, 788 N. E. 2d, at 982–983 (quoting *Commonwealth* v. *Cote*, 15 Mass. App. 229, 240, 444 N. E. 2d 1282, 1289 (1983)).[3] That protection was accorded the defendant here, the court observed, for the Commonwealth's evidence, presented before the "required finding of not guilty" motion was made and granted, in fact sufficed to prove every element of the firearm possession charge. See 58 Mass. App., at 171, 788 N. E. 2d, at 983. Rule 25(a) does not import more, the Appeals Court indicated. Because the jury remained seated with no break in the trial, and the defendant retained the opportunity to counter the Commonwealth's case,[4] that court concluded, neither Rule 25(a) nor the Double Jeopardy Clause froze as final the erroneous midtrial ruling on the firearm possession charge. I would not pretend to comprehend Rule 25(a) or Massachusetts' decisional law regarding state practice better than the Massachusetts Appeals Court did.

---

until after the jury has returned a verdict). Several States follow the federal model. See, *e. g.*, Alaska Rule Crim. Proc. 29(b) (2004); Del. Super. Ct. Rule Crim. Proc. 29(b) (2004); Iowa Rule Crim. Proc. 2.19(8)(b) (2004); N. Y. Crim. Proc. Law Ann. § 290.10(1) (West 2002); W. Va. Rule Crim. Proc. 29(b) (2004).

[3] Counsel for petitioner suggested at oral argument that the protection is more theoretical than real, for "what [judges] do as . . . a matter of practice in Massachusetts is they simply deny [the motion]." Tr. of Oral Arg. 56 (also noting that the motion to acquit may be renewed at the close of defendant's case and after the jury has returned a verdict).

[4] The Court hypothesizes that dismissal of one count might affect a defendant's course regarding the undismissed charges. *Ante*, at 472. The Appeals Court addressed that prospect concretely: Defendant Smith "has not suggested that the initial allowance of the motion affected his trial strategy with regard to the other charges." 58 Mass. App. 166, 171, 788 N. E. 2d 977, 983 (2003). Further, there is not even the slightest suggestion that Smith's codefendant, who was acquitted by the jury, "alter[ed] [her case] in harmful ways." But see *ante*, at 472, n. 6.

In sum, Smith was subjected to a single, unbroken trial proceeding in which he was denied no opportunity to air his defense before presentation of the case to the jury. I would not deny prosecutors in such circumstances, based on a trial judge's temporary error, *one* full and fair opportunity to present the State's case.