STATE OF MINNESOTA

IN SUPREME COURT

A23-1134

Court of Appeals                                                    Thissen, J.
                                                          Took no part, Gaïtas, J.

State of Minnesota,

                Respondent,

vs.

                                                          Filed: May 27, 2026
Patrick Jay Sullivan,                                Office of Appellate Courts

                Appellant.

_____

Keith Ellison, Attorney General, Jacob Campion, Assistant Attorney General, Saint Paul, Minnesota; and

James Ratz, Aitkin County Attorney, Aitkin, Minnesota, for respondent.

Cathryn Middlebrook, Chief Appellate Public Defender, Jenna Yauch-Erickson, Assistant State Public Defender, Saint Paul, Minnesota, for appellant.

_____

S Y L L A B U S

1.      The district court's reinstatement of the appellant's conviction did not violate the Double Jeopardy Clauses of the Minnesota Constitution and United States Constitution because the reinstatement was not double prosecution or double punishment.

2.      When a defendant prevents the State from submitting substantive evidence to satisfy a prior-convictions element for a charged offense, the invited-error doctrine

1

applies, and a court cannot grant relief unless failure to do so would seriously affect the fairness, integrity, or public reputation of judicial proceedings.

Affirmed.

O P I N I O N

THISSEN, Justice.

Appellant Patrick Jay Sullivan was charged with felony domestic assault in violation of Minn. Stat. § 609.2242, subd. 4. Domestic assault under this statute is a felony-level offense if the defendant also has two or more previous domestic violence-related convictions within the past ten years. Although Sullivan did not personally waive his right to a jury trial on the prior-convictions element, his trial counsel stipulated to Sullivan's prior convictions. As a result, the jury was not asked to determine whether the State had proven the prior-convictions element. The jury found Sullivan guilty of domestic assault. Sullivan petitioned for postconviction relief on the ground that the State failed to prove the prior-convictions element. The postconviction court vacated Sullivan's conviction on that ground. The State moved for reconsideration, claiming trial error, and the postconviction court, after reconsidering the matter, reinstated Sullivan's conviction. The court of appeals affirmed.

Before us Sullivan makes two arguments. First, he asserts that the postconviction court's reinstatement of his conviction violated the Double Jeopardy Clauses of the Minnesota Constitution and United States Constitution. We hold that the postconviction court's reinstatement of Sullivan's conviction did not violate the Double Jeopardy Clauses of the Minnesota Constitution and United States Constitution.

2

Sullivan also argues that his conviction must be reversed because the State provided insufficient evidence to prove the prior-convictions element of felony domestic assault under Minn. Stat. § 609.2242, subd. 4. The State does not dispute that the stipulation to the prior-convictions element was incorrectly received, but it argues that the resulting exclusion of the evidence the State otherwise would have offered was an error Sullivan invited that forecloses appellate relief. We hold that when a defendant prevents the State from introducing substantive evidence to satisfy a prior-convictions element for a charged offense, the invited-error doctrine applies. This is not a case where failure to grant the relief Sullivan seeks would seriously affect the fairness, integrity, or public reputation of judicial proceedings. Instead, to *grant* Sullivan relief based on the argument that the State did not introduce evidence—evidence that Sullivan invited the district court to erroneously exclude for his own benefit—would seriously affect the fairness, integrity, or public reputation of judicial proceedings here. Accordingly, we affirm the court of appeals as to the reinstatement of Sullivan's conviction, although on other grounds.

**FACTS**

On January 19, 2023, the State charged Sullivan with felony domestic assault under Minn. Stat. § 609.2242, subd. 4. To convict a defendant of felony domestic assault, the State must prove that the defendant committed misdemeanor domestic assault "within ten years of the first of any combination of two or more previous qualified domestic violence-related offense convictions or adjudications of delinquency." Minn. Stat.

3

§ 609.2242, subd. 4.[1] Sullivan had previously been convicted of felony fourth-degree criminal sexual conduct on January 9, 2017, and felony third-degree assault on August 24, 2015. Both crimes are qualified domestic violence-related offenses. Minn. Stat. § 609.02, subd. 16 (defining "qualified domestic violence-related offense").

During a pretrial conference the day before jury trial, Sullivan's trial counsel stated that "we are going to be stipulating or do stipulate" to the previous qualified domestic violence-related offenses. At the same hearing, defense counsel, the State, and the district court discussed the State's motion seeking to impeach Sullivan with his prior felony convictions for fourth-degree criminal sexual conduct and third-degree assault if Sullivan opted to testify at trial.

The next morning, in a hearing before the start of trial, the district court granted the State's motion to impeach Sullivan with the specified prior felony convictions. The State then raised the defense's stated intention to stipulate to the prior-convictions and requested the stipulation be "put on the record." Defense counsel confirmed Sullivan's willingness to stipulate to the prior-convictions and indicated that the purpose of stipulating was to avoid the "highly prejudicial" prior convictions from being introduced or proven at trial. The State requested a written stipulation, explaining that the prosecutor was "accustomed to having stipulations in written form signed by both parties and then

---

[1]   Misdemeanor domestic assault is defined in Minn. Stat. § 609.2242, subd. 1. There is no dispute that the State proved each element of misdemeanor domestic assault beyond a reasonable doubt. To enhance a misdemeanor domestic assault to a felony domestic assault, the State must also prove the defendant had two or more previous qualified domestic assault-related convictions within the previous ten years (the prior-convictions element). Minn. Stat. § 609.2242, subd. 4.

4

read to the jury as part of the instructions at the close of the State's case" because "stipulations are evidence." Defense counsel disagreed, stating that "I believe we just stipulated it into the record" and "I have never had a written stipulation. We've always just done it orally." Defense counsel also stated he did not want Sullivan's prior convictions "to be contained as elements" and presented to the jury. The district court agreed with defense counsel that stipulations were made on the record. Ultimately, no separate written stipulation was prepared. At no point did Sullivan personally waive his right to demand that the State prove to the jury that he had two prior qualified domestic violence-related convictions.

Sullivan testified at trial. On cross-examination, the State questioned him about his prior convictions. Sullivan acknowledged the convictions. The district court instructed the jury to consider Sullivan's prior convictions only for credibility purposes. When instructing the jury before deliberations, the district court omitted the prior-convictions element from the jury instructions on the felony domestic assault charge. At the end of the trial, the jury found Sullivan guilty of domestic assault, and the district court entered a conviction and sentence.

A different attorney represented Sullivan on appeal and in postconviction proceedings. Sullivan filed a notice of appeal to the court of appeals, then asked the court to stay his appeal to allow him to pursue postconviction relief. Minn. R. Crim. P. 28.02, subd. 4(4) (authorizing a defendant to file a motion to stay an appeal for postconviction proceedings). In his petition for postconviction relief, Sullivan argued the State failed to establish the prior-convictions element of felony domestic assault because Sullivan did

5

not personally stipulate to the prior-convictions and the jury was not asked to, and so did not, find that the State had proven the prior-convictions element of the offense. He requested that the district court vacate his conviction. The State did not file a written response to the petition. At the postconviction hearing, Sullivan argued that the State had not introduced sufficient evidence at trial to convict Sullivan, while the State argued that Sullivan invited any error.

The postconviction court vacated Sullivan's conviction, concluding that "the prior convictions element must either be found by a jury or stipulated to by the Defendant" and neither occurred. The postconviction court reinstated the previous terms and conditions of Sullivan's release, ordered that Sullivan be transported from prison to the county jail, and set a plea hearing date in advance of a new trial.

Sullivan subsequently moved to dismiss further proceedings on the ground that double jeopardy barred further prosecution. The State, in turn, filed a motion for the district court to reconsider its vacatur of Sullivan's conviction, arguing the postconviction court should have reviewed for error, not sufficiency of the evidence, when considering whether to vacate Sullivan's conviction. After a hearing and further briefing, the postconviction court reinstated Sullivan's conviction. The postconviction court reasoned that invalid waiver of the right to a jury trial on each element of an offense is error, but that the error in Sullivan's case was not prejudicial, and the jury's verdict was not attributable to the error.

The case returned to the court of appeals. Before that court, Sullivan briefed only whether double jeopardy prevented the postconviction court from reinstating his

6

conviction. The State briefed both the double jeopardy issue and whether the district court had otherwise erred in reinstating Sullivan's conviction. At oral argument, the court of appeals sua sponte raised whether sufficiency of the evidence was at issue on appeal. In response, the State argued that the prior-convictions stipulation should be reviewed for plain error under our holding in *State v. Kuhlmann*, 806 N.W.2d 844, 852–53 (Minn. 2011).

In a nonprecedential decision, the court of appeals affirmed Sullivan's conviction. *State v. Sullivan*, No. A23-1134, 2025 WL 302586, at *1 (Minn. App. Jan. 27, 2025). The court of appeals concluded that double jeopardy did not preclude the postconviction court from reinstating Sullivan's conviction. *Id.* at *4. And, assuming without deciding that sufficiency of the evidence was the appropriate review framework, the court concluded that Sullivan's acknowledgment of his previous qualified domestic violence-related convictions on the record at trial when impeached was "sufficient for a jury to reasonably conclude that Sullivan was guilty of felony domestic abuse." *Id.* at *5–6.

We granted Sullivan's petition for review.

## ANALYSIS

This case presents us with two questions. The first is whether the postconviction court's reinstatement of Sullivan's conviction constituted repeat prosecution or punishment for the same offense, thereby violating double jeopardy principles. The second question is whether Sullivan's conviction must be reversed because the State failed to meet its burden to prove a critical element of the charged offense when Sullivan prevented the State from introducing that evidence.

7

I.

The first question before us is whether the postconviction court's reinstatement of Sullivan's conviction violated double jeopardy principles. We conclude it did not.

The United States Constitution and Minnesota Constitution each protect a criminal defendant from being tried twice for the same offense. U.S. Const. amend. V; Minn. Const. art. I, § 7.[2] We review the application of double jeopardy de novo. *State v. Leroy*, 604 N.W.2d 75, 77 (Minn. 1999).

A person is twice put in jeopardy when that person is prosecuted or punished more than once for a single offense. *See United States v. Wilson*, 420 U.S. 332, 343 (1975). "It is a fundamental rule in double jeopardy jurisprudence that a verdict of acquittal on the merits cannot be reviewed on error or otherwise without putting the defendant twice in jeopardy, thereby violating the United States and Minnesota Constitutions." *State v. Large*, 607 N.W.2d 774, 779 (Minn. 2000) (first citing *United States v. Ball*, 163 U.S. 662, 671 (1896); and then citing *Leroy*, 604 N.W.2d at 77).

The general rule that the State cannot seek review following an acquittal, however, does not apply "when a judge rules in favor of the defendant after a verdict of guilty has

_____

[2]      We have repeatedly declined to decide whether the Minnesota Constitution provides greater double jeopardy protection than the United States Constitution, and we decline to do so here because it is unnecessary to our decision and because the parties did not make this argument. *State v. Large*, 607 N.W.2d 774, 778 n.2 (Minn. 2000) ("Because it is not necessary in order to resolve this case, we decline to decide whether the Minnesota Constitution affords greater double jeopardy protection than the United States Constitution."); *State v. Lerma*, 25 N.W.3d 40, 46 n.5 (Minn. 2025) ("We have not resolved [whether the double jeopardy standard under the Minnesota Constitution differs from the federal Constitution] and decline to do so here.").

been entered by the trier of fact." *Wilson*, 420 U.S. at 352. In that circumstance, "the Government may appeal from that ruling without running afoul of the Double Jeopardy Clause." *Id.* at 352–53. In other words, "[w]hen a jury returns a verdict of guilty and a trial judge … sets aside that verdict and enters a judgment of acquittal, the Double Jeopardy Clause does not preclude a prosecution appeal to reinstate the jury verdict of guilty." *Smith v. Massachusetts*, 543 U.S. 462, 467 (2005).[3] For similar reasons, "it is well settled that an appellate court's order reversing a conviction is subject to further review even when the appellate court has ordered the indictment dismissed and the defendant discharged." *Wilson*, 420 U.S. at 345.

The reason for the exception to the general rule is that "where there is no threat of either multiple punishment or successive prosecutions, the Double Jeopardy Clause is not offended." *Id.* at 344. When a jury has found a defendant guilty and a district court judge subsequently enters a judgment of acquittal,[4] reversal of the judgment of acquittal does not create the risk of multiple punishments or successive prosecutions because the remedy following reversal is not a retrial, but entry of conviction based on the jury's

---

[3]    If the fact-finder has not yet returned a guilty verdict when the district court or appellate court enters an acquittal, double jeopardy bars the government from appealing. *See Smith*, 543 U.S. at 467. That is not the situation here.

[4]    Sullivan's postconviction petition to vacate his conviction under Minn. Stat. § 590.01, subd. 1, and the defendant's motion for a judgment of acquittal in *United States v. Wilson*, 420 U.S. at 334, are procedurally distinct. For purposes of double jeopardy, however, the practical implications are the same: the State has the right to appeal because the fact-finder entered a guilty verdict, and the remedy for reversal is reinstatement of the jury verdict rather than a new trial. For clarity, we note that Sullivan's petition to vacate his judgment of conviction and sentence is also distinct from a post-verdict motion to vacate judgment under Minn. R. Crim. P. 26.04, subd. 3.

guilty verdict and (if one has been entered) imposing the sentence previously pronounced. *See id.* at 344–45.

Sullivan argues that the general rule does not apply in this case because the State asked the district court to review the vacatur of Sullivan's conviction through a motion for reconsideration rather than appealing the vacatur to the court of appeals. We perceive no analytical distinction for double jeopardy purposes.

First, in either case, there is no risk of a successive prosecution. The district court's decision to reverse its post-guilty-verdict vacatur of conviction in response to the State's motion for reconsideration does not run the risk of subjecting Sullivan to a new trial. The district court reinstated Sullivan's conviction pursuant to the same guilty verdict.

Second, the district court did not impose a second punishment on Sullivan; it reinstated the sentence it had imposed after the jury found Sullivan guilty. Sullivan argues that reinstating his conviction constituted repunishment because his conviction was vacated in postconviction proceedings and he was released from prison (until the district court issued its order reinstating his conviction). This argument is unpersuasive. Under the reinstated sentence, Sullivan was required to serve the remainder of the initially imposed sentence. Therefore, reinstating Sullivan's conviction did not constitute repunishment.

Sullivan's reliance on *State v. Jeffries* to support his second-punishment argument is misplaced. 806 N.W.2d 56 (Minn. 2011). In *Jeffries*, the defendant pled guilty to felony domestic assault, and the district court unconditionally accepted the plea and adjudicated the defendant guilty on the record at the same hearing. *Id.* at 59, 63. On the date set for

10

sentencing, the district court informed the defendant it was no longer willing to accept the plea agreement for several reasons—primarily because the court believed that a probationary sentence would be too lenient given the defendant's criminal history. *Id.* at 59–60. Later, the defendant and the State reached a second plea agreement, and the defendant pled guilty to felony domestic assault a second time—with a harsher sentence. *Id.* at 60. The district court accepted the second plea. *Id.*

The central issue in *Jeffries* was whether the district court unequivocally convicted the defendant after the first guilty plea. *Id.* at 61. We held the district court did convict the defendant at the plea hearing and, accordingly, held that the court could not take back the conviction and impose a second conviction following a new plea deal. *Id.* at 64. As Justice Stras put it in his concurrence:

> [T]he Double Jeopardy Clause barred the district court's acceptance of Jeffries' second guilty plea because the court had already convicted Jeffries once. Here, the district court unambiguously convicted Jeffries of the crime of felony domestic assault, then unambiguously *un*convicted Jeffries by giving him his "pleas back" and telling him that he was "not guilty" at a subsequent hearing, and then unambiguously convicted him again of felony domestic assault at yet another hearing after accepting a second plea agreement with a more severe punishment. At the risk of oversimplifying the issue in this case, the question is not whether jeopardy attaches when a guilty plea is accepted, but rather whether the Double Jeopardy Clause prohibits two *convictions* for the exact same crime. I have been unable to locate a single case from any jurisdiction permitting a trial court to convict a defendant, then unconvict the defendant because the court was surprised by the defendant's criminal history, and subsequently reconvict the defendant of the exact same offense. The absence of authority on this question is no doubt due to the Supreme Court's repeated recognition that the Double Jeopardy Clause "protects an individual against being twice convicted for the same crime."

11

*Id.* at 66 (Stras, J., concurring) (footnotes omitted) (quoting *Abney v. United States*, 431 U.S. 651, 660 (1977)). Our remedy was to vacate the second conviction and *reinstate* the first conviction based on the initial plea deal. *Id.* at 65 (majority opinion).

This case is distinguishable. In *Jeffries*, the defendant did not ask the district court to "*un* convict[]" him—the court did so sua sponte after a plea hearing. *Id.* at 66 (Stras, J., concurring); *see id.* at 60 (majority opinion). In contrast, Sullivan filed a postconviction petition *requesting* that the district court *vacate his conviction* following the jury's guilty verdict and the court entering conviction, according to a procedure prescribed by statute. *See* Minn. Stat. § 590.01, subd. 1. The district court initially granted the motion and vacated Sullivan's conviction, then, on reconsideration, reinstated it. Rather than being a second prosecution, this *reinstatement* of Sullivan's conviction is the same remedy we ordered in *Jeffries*. Further, Sullivan's sentence remained unchanged from that imposed following his only conviction. Sullivan's case involves neither multiple prosecutions nor multiple punishments.

In summary, we hold that the postconviction court reinstating Sullivan's conviction under the circumstances of this case did not violate the Double Jeopardy Clauses of the Minnesota Constitution and United States Constitution.

II.

We now turn to Sullivan's argument that his conviction must be reversed because the State did not prove a critical element of felony domestic assault—that Sullivan had two or more previous qualified domestic violence-related offense convictions. Minn. Stat. § 609.2242, subd. 4. The parties agree that the stipulation by Sullivan's trial counsel that

12

Sullivan had two previous qualified domestic violence-related convictions is invalid because Sullivan did not personally waive his right to have a jury decide whether he had the requisite qualified convictions. We conclude, however, that Sullivan is not entitled to relief because Sullivan invited the district court error that resulted in the State's failure to introduce evidence of the two previous qualified convictions. Further, declining to correct this invited error will not seriously affect the fairness, integrity, or public reputation of judicial proceedings; rather, *granting* relief in this case would seriously affect the fairness, integrity, or public reputation of judicial proceedings.

A.

Under the invited-error doctrine, a party is estopped from "assert[ing] on appeal an error that [the party] invited or that could have been prevented at the district court." *State v. Benton*, 858 N.W.2d 535, 540 (Minn. 2015); *State v. Trifiletti*, 6 N.W.3d 79, 94 (Minn. 2024) ("We have recognized that the doctrine of invited error prevents a party from challenging on appeal a district court decision to which the party consented or affirmatively requested."); *see also Pulczinski v. State*, 972 N.W.2d 347, 360 n.10 (Minn. 2022) (stating that the invited-error doctrine is a "species of estoppel").

Sullivan did not want his previous qualified domestic violence-related convictions presented to the jury. Sullivan's trial counsel verbally stipulated that Sullivan had two qualifying convictions. The State asserted that the stipulation should be committed to a writing *signed by both parties*. Sullivan's trial counsel objected, arguing that it was sufficient to stipulate "on the record." The district court agreed with Sullivan's trial counsel and accepted the verbal stipulation. As a result, the State did not affirmatively

13

introduce substantive evidence of Sullivan's two prior convictions to satisfy the prior-convictions element. Sullivan never personally waived his right to have the jury determine whether he had two previous qualified convictions. The jury never received any stipulation as to Sullivan's previous qualified domestic violence-related convictions.[5]

Put simply, the State did not introduce affirmative substantive evidence—which it indisputably possessed—of Sullivan's two previous qualified convictions because of errors Sullivan invited through his attorney refusing the State's request for a written stipulation signed by both parties. Because Sullivan invited the erroneous rulings that prevented the State from introducing evidence of his two previous qualified domestic violence-related convictions, Sullivan is estopped from challenging his felony domestic assault conviction based on the absence of that evidence.[6]

---

[5]    While the State ultimately agreed that the court would not read the stipulation to the jury, the State initially requested a written stipulation to the prior-convictions element, signed by both parties, that would be read to the jury. Only after Sullivan's trial counsel asserted that the defense had already stipulated to the prior-convictions element did the State agree to forgo a written stipulation. Under our reasoning in *State v. Trifiletti*, the State, by initially requesting a written stipulation to read to the jury, preserved the position it argues here: Sullivan, and not the State, invited the error of failing to obtain a valid waiver of Sullivan's right to a jury trial on the prior-convictions element. *Cf. Trifiletti*, 6 N.W.3d at 94–95 (reasoning that the defendant did not invite an error when he objected, lost the objection, and then agreed to proceed in the manner to which he had earlier objected).

[6]    The court of appeals concluded that the State introduced evidence of two previous qualified domestic violence-related convictions sufficient to support Sullivan's felony domestic assault conviction. *Sullivan*, 2025 WL 302586, at *6. The court of appeals relied on the fact that Sullivan acknowledged the convictions when the State introduced them for impeachment purposes. *Id.* Before us, the State concedes that we may not properly consider evidence of the two convictions—introduced for the purpose of impeachment and to attack Sullivan's credibility, not for substantive purposes—in a sufficiency of the evidence analysis. We are not bound by the State's concession because

14

B.

This conclusion, however, does not end our analysis. "[W]e have the discretionary authority to remedy errors that seriously affect the fairness, integrity[,] or public reputation of judicial proceedings, even when the defendant invited the error." *Benton*, 858 N.W.2d at 540. We can exercise our authority to grant relief based on an invited error if "failing to correct the error would have an impact beyond the current case by causing the public to seriously question whether our court system has integrity and generally offers accused persons a fair trial." *Pulczinski*, 972 N.W.2d at 356.[7]

Because Sullivan has not established that allowing the error he invited to stand would seriously affect the fairness, integrity, or public reputation of judicial proceedings, we may not correct the error. Declining to reverse Sullivan's conviction will not cause the public to seriously question whether our court system has integrity and offers accused persons fair trials. Indeed, this is "one of those very rare cases where the fairness and integrity of judicial proceedings would be adversely affected" if we *granted* the relief Sullivan requests. *State v. Griller*, 583 N.W.2d 736, 742 (Minn. 1998). The problem

---

"it is the responsibility of appellate courts to decide cases in accordance with law, and that responsibility is not to be diluted by counsel's oversights." *State v. Hannuksela*, 452 N.W.2d 668, 673 n.7 (Minn. 1990) (citation omitted) (internal quotation marks omitted). But because we resolve whether the State proved the prior-convictions element on other grounds, we do not address, and express no opinion on, the question of whether the court of appeals properly considered impeachment evidence in its sufficiency of the evidence analysis.

[7]     Our authority to grant appellate relief based on a forfeited assertion of error is limited to situations in which the error "seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Pulczinski*, 972 N.W.2d at 359 and 360 n.10.

15

Sullivan asks us to remedy—the State's failure to prove the prior-convictions element required for a felony domestic assault conviction—is a problem Sullivan created. He did so because it served his interest to keep substantive evidence that he had been convicted of other crimes from the jury. There is no question that the State *had* evidence that Sullivan had two previous qualified domestic violence-related convictions; Sullivan conceded as much during his own testimony. Accordingly, we cannot exercise our authority to review and reverse Sullivan's conviction on the ground the State failed to prove his prior qualified domestic violence-related convictions—evidence which the State had but did not introduce based on error Sullivan himself invited.

## CONCLUSION

For the foregoing reasons, we affirm the decision of the court of appeals, though in part on other grounds.

Affirmed.


GAÏTAS, J., took no part in the consideration or decision of this case.

16