OPINION
 

 COATS, Chief Judge.
 

 Jarsis Jamar Howard appeals his convictions for forgery in the second degree and resisting arrest. The State charged Howard with forgery for identifying himself as Omari S. Russell and signing Russell's name on a traffic ticket for speeding. Howard argues that the State did not establish the element of the offense of forgery that Howard had an intent to defraud Russell. We conclude that the State did prove this element. On the resisting arrest charge, the State presented evidence that Howard ran away from a state trooper and then hid in the woods. The State's only evidence that the trooper had physical contact with Howard was that he grabbed a little piece of Howard's clothing as Howard ran from him. Howard argues that the State never proved that Howard used force in resisting arrest and therefore the State did not present sufficient evidence of this charge. We agree with Howard that the State did not present sufficient evidence that he committed the crime of resisting arrest.
 

 Factual background
 

 On September 1, 2002 Alaska State Trooper Victor Aye observed a car traveling on the Sterling Highway. He estimated that the car was going over 100 miles per hour in a fifty-five mile per hour zone. Trooper Aye saw the car slow down because it was closing in on other cars. Trooper Aye activated his radar which clocked the car at 98 miles per hour. Trooper Aye pulled the car over and asked the driver for identification. The driver, later determined to be Jarsis Jamar Howard, claimed to have no identification with him. Howard claimed that his name was "Omari S. Russell." Trooper Aye checked with the dispatcher to get a physical description of Russell. The physical description for Russell did not seem to match-it indicated that Russell was 185 pounds, and Howard appeared to weigh much more than that. When Trooper Aye asked Howard about this, Howard claimed that he had recently gained weight. Trooper Aye then gave Howard a traffic citation for speeding. Howard signed the citation with Russell's name.
 

 After Howard had left the seene, Trooper Aye became suspicious that Howard had used a false name. He again contacted the dispatcher and discovered that, while Omari Russell was a real person living in Anchorage, the date of birth that Howard gave was one year off from Russell's actual date of birth. As a result of this discovery, Trooper Aye had the dispatcher put out a request to stop Howard's car, so that he could determine Howard's true identity.
 

 Alaska State Trooper Paul Randall stopped Howard's car. During the stop the dispatcher told Trooper Randall that the car's owner claimed to have loaned it to Jamar Howard. The dispatcher also reported that Howard had no valid driver's license and that there was an outstanding warrant for his arrest. When Trooper Randall asked Howard to identify himself, Howard again claimed to be Russell. When Trooper Randall confronted Howard with the fact that he knew his true identity, Howard continued to insist that he was Russell.
 

 At this point Trooper Randall decided to arrest Howard. He ordered Howard to turn around and place his hands behind his back. Trooper Randall then took out his handcuffs and reached for Howard's arm, but Howard turned and ran into the woods. Trooper Randall pursued Howard but did not follow him past the edge of the brush, explaining that he was concerned about the potential for a violent encounter.
 

 Mark Bellinger, an off-duty correctional officer who happened to live next door to where Howard was hiding, chased Howard into the woods and apprehended him. Once
 
 *1052
 
 restrained, Howard continued to insist that his name was Omari Russell.
 

 The State indicted Howard for second-degree forgery.
 
 [1]
 
 The State also charged Howard by information with giving false information to a police officer,
 
 [2]
 
 resisting arrest,
 
 [3]
 
 and driving without a valid license.
 
 [4]
 

 Howard's case went to trial before Superi- or Court Judge Jonathan H. Link. The jury convicted Howard of all four charges.
 

 The State presented sufficient evidence to allow the jury to comvict Howard of forgery in the second degree
 

 In order to convict Howard of forgery in the second degree the State had to demonstrate that: (1) Howard falsely made, completed, or altered a written instrument, (2) the instrument was, or purported to be, a public record, and (8) Howard had an intent to defraud.
 
 [5]
 
 Howard appeals only the sufficiency of the State's evidence of his intent to defraud.
 

 "Intent to defraud" is defined by statute as "an intent to injure someone's interest which has value or an intent to use deception.
 
 [6]
 
 Judge Link only instructed the jury on the "intent to injure someone's interest which has value" so we will only use this theory in analyzing the case.
 

 Howard first points out that Judge Link instructed the jury that to find Howard guilty they had to conclude that he "intended to defraud Omari S. Russell by depriving him of his driver's license and/or permanent fund dividend." Howard first contends that, under the jury instructions, in order to find "intent to defraud," the jury had to find that he had "an intent to injure someone's interest which has value." He contends that the forgery statute ceriminalizes situations where the defendant attempts to defraud another person of a valuable property interest. He argues there was no evidence that he obtained any valuable property from Russell.
 

 The Alaska statutes define "intent to defraud" as "an intent to injure someone's interest which has value ..." If the State proved that Howard intended to injure Om-ari's interest in his driver's license and/or permanent fund dividend, this conduct would appear to fall within the statute. The statute does not require that Howard needed to intend to obtain anything of value from Russell. Furthermore, both Russell's interest in his driver's license and his interest in his permanent fund dividend are interests which have value.
 

 We have found several cases where state courts have upheld forgery convictions where the defendant signed a false name to a traffic citation.
 
 [7]
 
 We have not located any cases where a court has held that the State's forgery statute was inapplicable to signing a false name to a traffic citation. Therefore, the language of the Alaska forgery statute including the definition of "intent to defraud" and case law support the conclusion that the State could properly charge and convict Howard of forgery for falsely signing his name on the traffic citation.
 

 Howard contends that the State did not show that he had any intent to harm Russell. He argues that his only intent was to avoid getting a traffic ticket. AS 11.81.900(a)(1) provides that a person acts intentionally when his "conscious objective is to cause that result; when intentionally causing a particular result is an element of the offense, that intent need not be the person's only objec-tivel.]" Judge Link instructed the jury on the definition of intentionally. Therefore, under the law and the jury instruction, even if Howard's primary intent was to avoid the consequences of getting a traffic ticket, the
 
 *1053
 
 jury could also find that he had an intent to harm Russell.
 

 It appears that, to convict a defendant of forgery, the State does not have to allege that any particular person or corporation was defrauded. It is sufficient for the State to show that the defendant had "an intent to defraud any person or corporation...."
 
 [8]
 
 (In the other state cases where the defendant was convicted of forgery for signing a false name to a traffic ticket, the courts have observed that the defendant's intent had been shown because he intended to defraud the arresting officers or the courts.
 
 [9]
 
 ) Therefore, to charge Howard with forgery, the State only had to allege that Howard signed the traffic ticket with the intent to defraud. The State did not have to specify whom Howard intended to defraud as long as it proved he had "an intent to defraud any person or corporation...." But the jury instructions which Judge Link gave required more. Under the jury instructions the State had to prove that Howard "intended to defraud Omari S. Russell by depriving him of his driver's license and/or permanent fund dividend." We will assume, arguendo, that the State had to present sufficient evidence to meet the jury instruction.
 

 The evidence which the State presented at trial was sufficient for the jury to conclude that Howard knew Russell. He gave Russell's name, including his middle initial. He knew Russell's month and day of birth-he only missed getting the birth date correct by missing the date of Russell's birth by one year. Trooper Aye testified that he had cited Howard for going 98 miles per hour in a 55 mile per hour zone. According to the trooper, Russell faced a mandatory court appearance. -If Russell failed to appear, a warrant would be issued for his arrest. In addition, Russell would get six points against his driver's license. According to the trooper, Russell faced possible action against his driver's license, a substantial fine, and garnishment of his permanent fund dividend. By signing Russell's name to the traffic ticket, Howard attempted to transfer all of these potential liabilities to Russell.
 

 Howard argues that there was no evidence that he would be aware that these penalties might befall Russell But there was evidence that Howard's own license had been revoked. It appears reasonable for the jury to infer that Howard had some knowledge of the potential penalties which he attempted to transfer to Russell. In conclusion, the jury instructions required the State to prove much more than was necessary to convict Howard of forgery. But the State presented sufficient evidence for the jury to find that Howard "intended to defraud Omari S. Russell by depriving him of his driver's license and/or permanent fund dividend."
 

 Howard argues that his offense would be more appropriately prosecuted as the misdemeanor offense of giving false information to a peace officer with the intent of implicating another in an offense or for giving false information about his identity while being issued a citation.
 
 [10]
 
 But, as we have previously pointed out, courts have unanimously held that signing a false signature on a traffic citation can properly be charged as forgery. When Howard gave Trooper Aye false information that he was Omari S. Russell, he violated the false information or report statute. By signing Russell's name to the traffic ticket with the intent to defraud, Howard committed the additional offense of forgery. Therefore, the State could properly charge Howard with that offense. We accordingly conclude that the State could properly charge and convict Howard of forgery and
 
 *1054
 
 that the State presented sufficient evidence for a jury to convict Howard of that offense.
 

 The State did not present sufficient evidence to support Howard's conviction for resisting arrest
 

 In order to convict Howard of resisting arrest the State had to demonstrate that, with the intent of preventing his arrest, he resisted personal arrest by force.
 
 [11]
 
 Normally, "force" is defined as "any bodily impact, restraint, or confinement or the threat of imminent bodily impact, restraint, or confinement."
 
 [12]
 

 The State's first theory of resisting arrest was that Howard resisted arrest after Trooper Randall ordered Howard to turn around and place his hands behind his back. Howard turned and ran into the woods. Howard contends that he did not commit the crime of resisting arrest because Trooper Randall never touched him. He argues that in the absence of physical contact, he did not use any force against Trooper Randall. But, we are to look at the evidence in the light most favorable to the State in determining whether the State presented sufficient evidence to uphold the conviction.
 
 [13]
 

 Trooper Randall testified that, while he did not actually get a grip on Howard's arm when he reached to place him in handcuffs, he did get a hold of a little piece of Howard's jacket or cuff while Howard was running away. Therefore, there was evidence that Trooper Randall had some physical contact with Howard as Howard was running away. The question next becomes whether this contact constituted "force" under the resisting arrest statute. Answering this question requires us to construe the Alaska resisting arrest statute, including the definition of force. In interpreting a statute, we are to consider the language of the statute, the legislative history, and the purpose of the statute. "The goal of statutory construction is to give effect to the legislature's intent, with due regard for the meaning the statutory language conveys to others.
 
 [14]
 

 We have not found any Alaska cases which help us to interpret the resisting arrest statute or any legislative commentary. When we look at the legislative history of the Alaska resisting arrest statute, we discover that it was derived from the Hawaii statute.
 
 [15]
 
 Hawail Statute 710-1026 reads as follows:
 

 (1) A person commits the offense of resisting arrest if the person intentionally prevents a law enforcement officer acting under color of the law enforcement officer's official authority from effecting an arrest by:
 

 (a) Using or threatening to use physical force against the law enforcement officer or another; or
 

 (b) Using any other means creating a substantial risk of causing bodily injury to the law enforeement officer or another.
 

 The Hawaii statute appears to be similar to the Alaska statute, except that our statute also prohibits any act of criminal mischief intended to impede an arrest.
 
 [16]
 
 Where we have adopted a statute from another state, it is reasonable to infer that the legislature intended to adopt constructions previously placed upon the statute by the courts of that state.
 
 [17]
 
 However, we have not found any Hawail decisions that interpret the Hawaii statute with facts similar to those before us in this case. But there is a commentary to the Hawaii statute. The Hawaii Penal Code became effective on January 1, 1973. According to the penal code the commentary was "prepared by the Judicial Counsel of Hawail and by the legislative counsel" and
 
 *1055
 
 was "edited by the revisor of statutes.
 
 [18]
 
 The commentary is to be used "as an aid in understanding the code but not as evidence of legislative intent.
 
 [19]
 
 "® The commentary to the Hawaii statute provides some insight:
 

 Resisting arrest is one of the commonest forms of obstructing government operation. The Code deals specifically with resisting arrest out of a desire to confine the offense to forcible resistance that involves some substantial danger to the person. Mere non-submission ought not to be an offense. One who runs away from an arresting officer or who makes an effort to shake off the officer's detaining arm might be said to obstruct the officer physically, but this type of evasion or minor seuffling is not unusual in an arrest, nor would it be desirable to make it a eriminal offense to flee arrest. In this case the proper social course is to authorize police pursuit and use of reasonable force to effect the arrest. If the actor is captured, he may be convict ed of the underlying offense.
 
 [20]
 

 Therefore, according to the commentary to the Hawaii statute, the kind of minor contact that Trooper Randall had with Howard while Howard was running away would not constitute resisting arrest under the Hawaii statute. The Hawaii statute appears to conclude that a certain amount of physical contact will take place during any arrest, and the policy behind the statute is to confine the offense to uses of force that involve more than mere noncompliance.
 

 We presume that the Alaska legislature was aware of this commentary when it adopted our resisting arrest statute. We believe that the legislature was therefore aware of this "aid in understanding the [Ha-waill code" and probably intended to adopt this interpretation of the Alaska resisting arrest statute.
 

 We accordingly conclude, based on the legislative history of our resisting arrest statute, that the minimal contact which the State proved in this case was not sufficient to constitute "force" for purposes of the resisting arrest statute.
 

 The State presented a second theory of how Howard committed the offense of resisting arrest. The State argued that when Howard fled into the woods, Trooper Randall did not follow Howard because he was concerned that he might provoke a serious confrontation with Howard. He therefore waited for assistance to handle the situation with more safety. The State argues that Howard's actions therefore constituted an exercise of force against Trooper Randall because Howard's actions created "the threat of imminent bodily impact.
 
 [21]
 
 But Trooper Randall conceded that Howard did not do anything other than attempt to evade him by hiding in the woods.
 

 Under these circumstances, we see no basis for a jury to find that Howard's act of hiding in the woods constituted a threat of imminent bodily impact. We do not interpret the statute to apply to situations where a defendant merely tries to evade the officer or hide. It may well have been prudent for Trooper Randall, for his own safety and Howard's, to take steps to avoid a possible confrontation in the woods. But that does not convert Howard's actions into resisting arrest. We accordingly conclude that the State did not present sufficient evidence for the jury to convict Howard under this theory.
 

 Conclusion
 

 We conclude that the State did present sufficient evidence for the jury to convict Howard of forgery in the second degree for signing Omari S. Russell's name to the traffic citation with the intent to defraud. We accordingly affirm that conviction. But we conclude that the State did not present sufficient evidence for the jury to convict Howard of resisting arrest. We therefore order the trial court to enter a judgment of acquittal for Howard on that charge.
 

 
 *1056
 
 Howard's conviction for forgery in the see-ond degree is AFFIRMED. His conviction for resisting arrest is REVERSED.
 

 [1]
 

 . AS 11.46.505(a)(2).
 

 [2]
 

 . 11.56.800(a)(1)(B)Gi). P
 

 [3]
 

 . 11.56.700(a)®). p
 

 [4]
 

 . 28.15.011(b). p
 

 [5]
 

 . 11.46.505(a)(2) and AS 11.46.510(a). 2
 

 [6]
 

 . 11.46.990(11). 2
 

 [7]
 

 . Sizemore v. State, 847 So.2d 970 (Ala.Crim.App.2002); State v. Bedoni, 161 Ariz. 480, 779 P.2d 355 (App.1989); Rushing v. State, 684 So.2d 856 (Fla.App.1996); State v. Wasson, 125 N.M. 656, 964 P.2d 820 (App.1998); ex. rel. P.S. v. State, 38 P.3d 303 (Utah App.2001); State v. Richards, 109 Wash.App. 648, 36 P.3d 1119 (2001).
 

 [8]
 

 . Morrison v. State, 469 P.2d 125, 126 (Alaska 1970); Wasson, 964 P.2d at 823.
 

 [9]
 

 . Sizemore, 847 So.2d at 973; Bedoni, 779 P.2d at 359; Wasson, 964 P.2d at 823-24; ex. rel. P.S., 38 P.3d at 307.
 

 [10]
 

 . AS 11.56.800 provides in pertinent part:
 

 False information or report.
 

 (a) A person commits the crime of false information or report if the person knowingly
 

 (1) gives false information to a peace officer
 

 (A) with the intent of implicating another in an offense; or
 

 (B) concerning the person's identity while the person is
 

 (i) under arrest, detention, or investigation for a crime; or
 

 (ii) being served with an arrest warrant or being issued a citation.
 

 [11]
 

 . AS 11.56.700(a)(1).
 

 [12]
 

 . AS 11.81.900(b)(26).
 

 [13]
 

 . Dorman v. State, 622 P.2d 448, 453 (Alaska 1981) (quoting Martin v. Fairbanks, 456 P.2d 462, 464 (Alaska 1969)).
 

 [14]
 

 . Muller v. BP Exploration (Alaska) Inc., 923 P.2d 783, 787 (Alaska 1996) (quoting Tesoro Alaska Petroleum Co. v. State, 746 P.2d 896, 905 (Alaska 1987)).
 

 [15]
 

 . Alaska Criminal Code tentative draft Part IV, Article V.
 

 [16]
 

 . AS 11.56.700(a)(2).
 

 [17]
 

 . State v. Flores, 160 Ariz. 235, 772 P.2d 589, 593-94 (App.1989).
 

 [18]
 

 . Hawaii Penal Code Division 5, Title 37.
 

 [19]
 

 . Id.
 

 [20]
 

 20. Commentary on Haw.Rev.Stat. § 710-1026 (emphasis added).
 

 [21]
 

 . AS 11.81.900(b)(26).