**Warren E. EIDE, Appellant/Cross–Appellee,**

v.

**STATE of Alaska, Appellee/Cross–Appellant.**

Nos. A–9350, A–9609.

Court of Appeals of Alaska.

Oct. 5, 2007.

Dan Lowery, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant/Cross–Appellee.

W.H. Hawley, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Talis J. Colberg, Attorney General, Juneau, for the Appellee/Cross–Appellant.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

*OPINION*

STEWART, Judge.

A jury convicted Warren Eide of first-degree vehicle theft, driving while his license was revoked, and resisting arrest. After determining that the evidence was insufficient to sustain the conviction for resisting arrest, Judge Brown entered a judgment of acquittal on the resisting arrest conviction. In this

appeal, we address the sufficiency of the evidence supporting the jury's guilty verdicts at Eide's trial. Eide contends that insufficient evidence supports his convictions for first-degree vehicle theft and for driving while his license was revoked.[1] The State, as cross-appellant, argues that Judge Brown improperly set aside the jury's verdict finding Eide guilty of resisting arrest.[2]

We reject Eide's claim because we conclude that a fair-minded juror exercising reasonable judgment could conclude that the State had proven the vehicle theft and revoked license charges. We also reject the State's claim because insufficient evidence was admitted at trial to support the jury's verdict on the subsection of the resisting arrest statute that Eide was charged with violating. Accordingly, we affirm the superior court.

*Facts and proceedings*

On the evening of November 9, 2004, Jack Thomas drove Eide and his roommate, Victoria Miller Cameron, to his recently completed log house in the Soldotna area to celebrate Thomas and his wife moving into the house. Eide lived near Thomas and Thomas frequently picked Eide up when he was hitchhiking.

All four at the house were drinking. Eventually, everyone went to bed, but during the night a dispute developed. Thomas started his truck, expecting to drive Eide and Cameron to their house. The dispute became heated, and Eide and Cameron refused to leave. Thomas called 911.

Cameron left the house, walked down the driveway, and did not return. Eide remained and continued to argue with Thomas. Eide got dressed, spoke with a 911 dispatcher, and proceeded to leave the house. Thomas tended to his wife who developed a medical problem and he asked the dispatcher to send an ambulance.

Looking out of a window, Thomas saw Eide in his truck, staring back at Thomas as he backed Thomas's truck out of the driveway and drove away. Thomas had not given Eide permission to drive the truck and did not do anything that would indicate to Eide that he was free to drive the truck. Thomas also knew that Eide did not have a license. The truck was found empty a few miles away. Cameron testified that she left the house and walked home through the woods.

A few days later, Alaska troopers went to Eide's residence to arrest him. Eide told Sergeant Barry Wilson that he had not been at Thomas's residence but had spent the night at his parents' place. (Sergeant Wilson had monitored Thomas's 911 call and heard Eide identify himself when he got on the line.) Eide was on the floor in a sleeping bag. The troopers told Eide several times that he was under arrest. Trooper Lawrence Erickson grabbed Eide by the wrist to pull him up, but Eide jerked away, told the trooper "No, leave me alone, I ain't going." Eide rolled onto his stomach with his arms underneath him. Trooper Erickson told Eide several times to stop resisting arrest.

Trooper Erickson was concerned that he or Eide would get hurt if he had to wrestle Eide into submission. Accordingly, Trooper Erickson chose to apply an electric shocking device to Eide in an attempt to gain his cooperation. The electric shocking device causes pain and can temporarily disable the recipient of the shock. After Trooper Erickson applied the device to Eide, Eide jumped up and submitted to his arrest.

Four people testified at trial, Thomas, Cameron, and the two troopers mentioned above. Eide did not call any witnesses. The parties stipulated that Eide knew that his license was revoked at the pertinent time.

*Discussion*

When a defendant attacks a conviction for insufficiency of the evidence, this court must view the evidence presented, and reasonable inferences from the evidence, in the light most favorable to upholding the jury's verdict.[3] Viewing the evidence from this per-

---

1. AS 11.46.360(a)(1) and AS 28.15.291(a)(1), respectively.

2. AS 11.56.700(a)(3).

3. *See Simpson v. State,* 877 P.2d 1319, 1320 (Alaska App. 1994).

spective, we must decide whether a fair-minded juror exercising reasonable judgment could conclude that the State had met its burden of proving guilt beyond a reasonable doubt.[4]

■ Eide argues that his convictions must be reversed because the evidence does not prove that he drove Thomas's vehicle. However, Eide argues the evidence in a light favorable to himself. Viewing the evidence and reasonable inferences from the evidence in the light most favorable to upholding the verdicts, we conclude that the record contains substantial evidence that Eide drove Thomas's truck away from Thomas's residence. Thomas's testimony alone provides support for this fact because Thomas testified that he saw Eide back his truck up and drive away. We conclude that the evidence was sufficient to support the verdicts for first-degree vehicle theft and driving while license revoked.

■ We next turn to the State's claim that Judge Brown erroneously entered a judgment of acquittal after the jury found Eide guilty of resisting arrest. Double jeopardy does not bar an appeal from a court's decision setting aside a jury's verdict.[5] Eide concedes that double jeopardy does not bar this Court's review of Judge Brown's order setting aside the jury's verdict.

The State charged Eide under AS 11.56.700(a)(3). That subsection of the resisting arrest statute required the State to prove that Eide, knowing that a peace officer was making an arrest, and with the intent of preventing the officer from making the arrest, resisted the arrest by any means that created a substantial risk of physical injury to any person. Physical injury is defined as "a physical pain or an impairment of physical condition." The jury was so instructed, and found Eide guilty.

After accepting the jury's verdicts and before sentencing, Judge Brown entered a judgment of acquittal, concluding that there was insufficient evidence to support a finding that Eide resisted arrest. Judge Brown ruled that Eide's conduct did not rise to the level of "force" required for resisting arrest. Citing this Court's opinion in *Howard v. State*,[6] Judge Brown concluded that Eide's "passive resistance is insufficient to constitute 'force' for purposes of the resisting arrest statute."

In *Howard*, this court reversed a resisting arrest conviction because we concluded that fleeing from the arresting officer and hiding in the woods was not sufficient to support this crime.[7] The defendant never touched the arresting officer and at best, the only contact between the two was when the trooper touched Howard's jacket or cuff as he was fleeing. Under AS 11.81.900(b)(27), force is defined as "any bodily impact, restraint, or confinement or the threat of imminent bodily impact, restraint, or confinement, 'force' includes deadly and nondeadly force." Because there was no evidence or any reasonable inference that Howard had resisted his arrest by "force," we reversed his conviction for resisting arrest.[8]

After Judge Brown entered the judgment of acquittal, the State moved for reconsideration, pointing out that Eide was not prosecuted under the subsection of resisting arrest that required "force," but under the subsection that required the State to prove that Eide resisted the arrest "by any means" that created a substantial risk of physical injury to any person.

In response, Judge Brown ruled that there was insufficient evidence of conduct on Eide's part that created a substantial risk of injury to any person: "There was insufficient evidence that defendant employed any 'means' that created a substantial risk of injury to another person."

As the State describes in its brief, Trooper Erickson grabbed at Eide and attempted to get him up, but Eide jerked away and, as described by Trooper Erickson, "turtled"— Eide oriented his body so that his arms and

---

**4.** See *Dorman v. State*, 622 P.2d 448, 453 (Alaska 1981).

**5.** See *Smith v. Massachusetts*, 543 U.S. 462, 467, 125 S.Ct. 1129, 1134, 160 L.Ed.2d 914 (2005).

**6.** 101 P.3d 1054 (Alaska App.2004).

**7.** *Id.* at 1058–59.

**8.** *Id.*

wrists were underneath his torso—and announced "No, I ain't going." As the State pointed out, Trooper Erickson warned Eide several times that he was under arrest. The State contends that Eide's actions and Trooper Erickson's testimony that any officer attempting to arrest Eide would be injured if the officer got down on the floor to wrestle Eide's arms free and handcuff him, are sufficient to sustain the conviction. The State also argues that the fact that Trooper Erickson had to resort to using an electric shocking device to subdue Eide further reflects the serious risk that Eide imposed.

The commentary to AS 11.56.700 [9] indicates that the legislature did not want the crime of resisting arrest to encompass "mere non-submission to an arrest." The commentary includes an example of conduct that the legislature envisioned as the kind that creates a substantial risk of physical injury— "fleeing in an automobile at high speed through a residential area." [10] The gravity and imminence of the danger imposed by this conduct contrasts sharply with Eide's passive positioning. Although Trooper Erickson was convinced that it was likely that he or Eide would be injured because Eide was uncooperative, Eide's conduct of turning "turtle" and announcing that he was not going with the trooper does not rise above "mere non-submission" because Eide's conduct did not actively create a danger of physical injury.

### Conclusion

Eide's convictions for first-degree vehicle theft and driving while license revoked are AFFIRMED. The superior court's judgment of acquittal on resisting arrest is AFFIRMED.

MANNHEIMER, Judge, concurring.

I write separately for two purposes: to explain my analysis of the elements of the crime of resisting arrest, and to explain my conclusion that the State's evidence against Eide was not sufficient to establish those elements.

The resisting arrest statute, AS 11.56.700(a), sets forth a culpable mental state and an *actus reus* that the State must prove. The culpable mental state is "the intent of preventing [an] officer from making [an] arrest". The *actus reus* is "resist[ing] ... or interfer[ing] with the arrest" by one of three methods:

(1) the use or threat of force;

(2) the commission of criminal mischief in any degree; or

(3) the use of any other means that creates a substantial risk of physical injury to any person.

Eide was charged under subsection (3) of this statute. In other words, the State alleged that Eide resisted or interfered with an arrest (his own) by employing a means that created a substantial risk of physical injury to one or more people.

To prove this *actus reus*, the State relied on evidence that Eide pulled his wrist from the officer's grasp and then lay on the floor with his arms and legs tucked underneath him, refusing to get up and be handcuffed.

The State argues that Eide's conduct created a substantial risk of injury (either to himself or to the arresting officer)—because the officer reasonably feared that if he tried to lift Eide from the floor to effect the arrest, Eide might physically resist the officer's efforts, and someone might get hurt.

Based both on the wording of the statute and on the accompanying commentary, I conclude that subsection (3) of the statute was not intended to be read in this fashion. In particular, subsection (3) does not authorize a conviction based on the possibility or prediction that an arrestee might later violate subsection (1) by using force to resist or impede an arrest. Rather, subsection (3) requires proof that the defendant was then and there engaged in conduct that actively threatened injury to himself or some other person.

Both the legislature's official commentary to AS 11.56.700 and the Criminal Code Subcommission's commentary to the earlier draft statute expressly state that the offense of

**9.** Commentary on the Alaska Revised Criminal Code, 2 Senate Journal Supp. No. 47 at 85 (June 12, 1978).

**10.** *Id.*

resisting arrest was not intended to encompass "mere non-submission" to an arrest. Here is the pertinent portion of the official commentary, found in 1978 Senate Journal Supp. No. 47 (June 12), page 85:

[This statute] prohibits resisting or interfering with an arrest by the use of force.... A person also violates the statute by committing any degree of criminal mischief ([*e.g.*], tampering with the officer's squad car) or by doing any act that creates a "substantial risk of physical injury" ([*e.g.*], fleeing in an automobile at high speeds through a residential area). [But][m]ere non-submission to an arrest does not reach the level of resisting or interfering with [an] arrest [prohibited by this statute].

Based on this commentary, I conclude that Eide's act of lying on the floor and assuming a "turtle" posture (*i.e.*, placing his arms and legs underneath him, out of the officer's immediate reach) is not the kind of conduct that the legislature intended to punish.

Eide's act of curling up on the floor was not a use of force, nor was it criminal mischief. The State argues that Eide's conduct created a risk of injury—but only in the sense that the officer reasonably suspected that Eide might begin to use force against the officer if the officer continued his efforts to take Eide into custody. The legislative commentary to AS 11.56.700(a)(3) shows that this is not the kind of conduct that the legislature was contemplating when they enacted this "substantial risk of physical injury" provision of the statute. The legislature's example of conduct that would violate subsection (3)—"fleeing in an automobile at high speeds through a residential area"—shows that the legislature was thinking of conduct that actively and immediately threatens people's safety.

Eide's act of curling up on the floor did not create such a risk. Rather, Eide's conduct fell within the range of passive resistance that the legislature called "mere non-submission"—conduct that the legislature did not intend to punish.

It was not enough for the State to prove that the officer reasonably suspected that, if he pursued further efforts to remove Eide from the floor and take him into custody, this would prompt Eide to *begin engaging* in conduct that created a danger of physical harm. Unless and until Eide actually began to engage in such conduct, he did not commit the crime of resisting arrest as defined in subsection (3) of the statute.

The State has one more potential argument. As the State points out in its brief, Eide did not merely curl up on the floor. Eide also pulled the sleeping bag over his body and, when the officer attempted to grab Eide's wrist (so that he could handcuff him), Eide yanked his wrist away and tucked his hands underneath his body.

It could be argued that these actions constituted the use of force to impede the arrest—and, thus, a violation of subsection (1) of the statute. However, the State does not make this argument. Rather, the State argues that these actions, too, constituted a violation of subsection (3)—because, again, they suggested that any further efforts to take Eide into custody would be met with more forcible resistance.

Both of these arguments—*i.e.*, the arguments that Eide's conduct violated either subsection (1) or subsection (3) of the statute—are answered in the Criminal Code Subcommission's commentary to the draft statute, TD 11.56.700. This commentary (found in Part 4 of the Tentative Draft of our criminal code) mirrors the later legislative commentary by declaring that an act of "mere non-submission" is not included within the definition of the crime. The draft commentary then adds an explanatory quote from Hawaii's commentary to its corresponding statute:

Mere non-submission to an arrest does not reach the level of resisting or interfering with [an] arrest [as defined in this statute]. As noted in the Commentary to the Hawaii Penal Code:

One who runs away from an arresting officer or who makes an effort to shake off the officer's detaining arm might be said to obstruct the officer physically, but this type of evasion or minor scuffling is not unusual in an arrest, nor would it be desirable to make it a crimi-

nal offense.... In [such] case[s,] the proper social course is to authorize police pursuit and [the] use of reasonable force to effect the arrest.

*Alaska Criminal Code Revision, Tentative Draft,* Part 4 (1977), page 74, Commentary to TD 11.56.700.

Eide's acts of covering himself with a sleeping bag and pulling his wrist away from the officer's grasp are the types of "evasion or minor scuffling" that, according to the commentary, do not constitute the crime of resisting arrest.

It may well be that, given Eide's actions, the officer reasonably concluded that Eide might engage in future violent resistance if the officer continued his efforts to take Eide into custody. And, as the commentary to the draft statute suggests, the reasonableness of the officer's prediction of potential violence would be significant if, for example, the issue being litigated was whether the officer was justified in using the stun gun on Eide.

But the issue in this case is whether the State proved that Eide resisted arrest as defined in AS 11.56.700(a). Based on the wording of this statute, and based on the descriptions of the intended scope of this statute in both the official legislative commentary and the Criminal Code Subcommission's commentary to the draft statute, I conclude that Eide's conduct (even viewed in the light most favorable to the State) does not fall within the conduct prohibited by AS 11.56.700.

Accordingly, I agree with my colleagues that Eide was entitled to a judgement of acquittal on the charge of resisting arrest.