NOTICE

*The text of this opinion can be corrected before the opinion is published in the* <u>Pacific</u> <u>Reporter</u>. *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

JEAN L. SCHLOSSER JR.,

                Appellant,

       v.

STATE OF ALASKA,

                Appellee.

Court of Appeals No. A-11405
Trial Court No. 3DI-11-021 CR

O P I N I O N

No. 2498 — May 6, 2016

Appeal from the Superior Court, Third Judicial District, Dillingham, John W. Wolfe, Judge.

Appearances: Glenda J. Kerry, Girdwood, under contract with the Public Defender Agency, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant. Diane L. Wendlandt, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Craig W. Richards, Attorney General, Juneau, for the Appellee.

Before: Mannheimer, Chief Judge, Allard, Judge, and Suddock, Superior Court Judge.[*]

Judge MANNHEIMER.

---

[*] Sitting by assignment made pursuant to Article IV, Section 16 of the Alaska Constitution and Administrative Rule 24(d).

The defendant in this case, Jean L. Schlosser Jr., was observed syphoning gasoline from other people's vehicles. When a police officer arrived to investigate, Schlosser forcibly resisted the officer's attempts to take him into custody. During the ensuing struggle, the officer sustained a permanent injury to his hand.

Based on this incident, Schlosser was convicted of first-degree trespass, fourth-degree theft, resisting arrest, fourth-degree escape, and second-degree assault (reckless infliction of serious physical injury).

In this appeal, Schlosser contends that the evidence presented at his trial was not legally sufficient to support his convictions for assault, escape, and theft. Schlosser also contends that his convictions for resisting arrest, escape, and assault should be overturned because the trial judge did not give the jury a specific instruction on the law of self-defense. Finally, Schlosser argues that his convictions for resisting arrest and escape should be reversed because the trial judge did not define the terms "resisted arrest", "actual restraint", and "substantial risk of physical injury" for the jury.

As we explain in this opinion, we agree with Schlosser that the evidence was not sufficient to support his second-degree assault conviction because, under the circumstances of this case, it was not reasonably foreseeable that the officer would sustain protracted or permanent injury during his struggle with Schlosser. However, we conclude that the remainder of Schlosser's claims are meritless.

*Underlying facts*

On January 13, 2013, in Dillingham, Jean Schlosser syphoned gasoline from the tanks of other people's vehicles. A bystander observed what Schlosser was doing and alerted one of the vehicle owners, who in turn called the police.

Dillingham Police Sergeant Daniel Pasquariello arrived to investigate. Pasquariello observed evidence of the gasoline syphoning, and he also discovered (from checking with his dispatcher) that there was already a warrant for Schlosser's arrest in an unrelated matter.

Pasquariello contacted Schlosser (who was still at the scene) and told him that he was under arrest. But when Pasquariello directed Schlosser to put his hands behind his back, Schlosser refused. Schlosser then bolted sideways and ran from the officer.

Pasquariello pursued Schlosser, tackled him, and tried to hold him on the ground and handcuff him. But Schlosser continued to struggle: he pulled himself upright and pulled himself from Pasquariello's grasp. Pasquariello went after Schlosser and again pulled him to the ground. Schlosser managed to grab the hood of a parked car and pull himself up once more. The two men stood facing each other, with Pasquariello holding onto Schlosser. Then Schlosser shoved Pasquariello backwards. Pasquariello fell to the ground, but he was still holding onto Schlosser, and Schlosser fell on top of him.

When Pasquariello hit the ground, he felt an intense pain in his hand. It turned out that one of the bones in Pasquariello's hand had been broken in six places. This injury required surgery and the placement of a permanent metal plate to hold the bone together. At Schlosser's trial, Pasquariello testified that his hand was permanently weakened, and that he had lost partial function of the hand.

Based on this episode, Schlosser was charged with first-degree trespass, fourth-degree theft, resisting arrest, fourth-degree escape, and second-degree assault (reckless infliction of serious physical injury).[1] At trial, Schlosser argued that he was

---

[1] AS 11.46.320(a)(1), AS 11.46.150(a), AS 11.56.700(a)(3), AS 11.56.330(a)(2), and AS 11.41.210(a)(2), respectively.

not guilty of assault because Sergeant Pasquariello had used excessive force on him — thus entitling Schlosser to use force against the officer to defend himself. The jury rejected this defense and convicted Schlosser of all the charges.

*The sufficiency of the evidence to support Schlosser's conviction for second-degree assault*

The charge of second-degree assault required the State to prove that Schlosser caused serious physical injury to Sergeant Pasquariello and that, when Schlosser did so, he was acting "recklessly" (as defined in AS 11.81.900(a)(3)) with respect to this potential result of his actions.

The evidence at Schlosser's trial was clearly sufficient to establish that Sergeant Pasquariello suffered a "serious physical injury" as that term is defined in AS 11.81.900(b)(57)(B) — "physical injury that causes ... protracted loss or impairment of the function of a body member". The evidence at Schlosser's trial was likewise clearly sufficient to establish that Schlosser's actions were a legal cause of this serious physical injury.

But there is a problem as to the remaining element of the State's proof: proof that Schlosser acted "recklessly" with respect to the risk that his conduct would produce this result.

The culpable mental state of "recklessly" is defined in AS 11.81.900(a)(3). This definition comprises two elements: first, an objective appraisal of the danger posed by the defendant's conduct; and second, an inquiry into whether the defendant was aware of this danger.

The "objective appraisal" element of recklessly requires the government to prove that, under the circumstances, there was a "substantial and unjustifiable risk" that

the prohibited result would occur. This phrase ("substantial and unjustifiable risk") is defined in the statute as "[a] risk ... of such a nature and degree that disregard of it constitute[d] a gross deviation from the standard of conduct that a reasonable person would observe in the situation[.]"

The "awareness" element of recklessly requires the government to prove either (1) that the defendant "[was] aware of and consciously disregard[ed]" this risk, or (2) that the defendant "would have been aware [of this risk] had [the defendant] not been intoxicated".

In Schlosser's case, the government was required to prove that, given the circumstances of Schlosser's struggle with Sergeant Pasquariello, there was a "substantial and unjustifiable risk" that the officer would suffer serious physical injury — a risk of serious physical injury so great that Schlosser's disregard of this risk constituted a "gross deviation from the standard of conduct that a reasonable person would observe in the situation".

Even viewing the evidence in the light most favorable to the jury's verdict, Schlosser's actions did not give rise to a "substantial and unjustifiable" risk of serious physical injury (as that phrase is defined in AS 11.81.900(a)(3)).

Schlosser broke away and ran from Sergeant Pasquariello when the sergeant initially tried to handcuff him. After Pasquariello chased and tackled Schlosser, Schlosser struggled with Pasquariello on the ground. Schlosser was able to get to his feet again, and he continued to struggle with Pasquariello. Schlosser turned around to face Pasquariello, and then he pushed Pasquariello to the ground. As Pasquariello fell, he held on to Schlosser, so that Schlosser landed on top of him. At that point, apparently, Pasquariello suffered the injury to his hand.

All of Schlosser's actions consisted of wrestling, pushing, and otherwise struggling to escape Pasquariello's control. There was no evidence that Schlosser

punched, kicked, or did anything else to inflict blunt force trauma on Sergeant Pasquariello.

Clearly, there is always some risk that someone's bone may be broken when people push, tackle, or wrestle with each other. But if the pushing, tackling, and wrestling are within typical bounds, the possibility that someone might break a bone — while certainly real — is not a *likely* outcome. More specifically, the breaking of a bone in such circumstances is not so likely an outcome that the law views all of the participants as guilty of a "gross deviation from the standard of conduct that a reasonable person would observe in the situation".

If we were to rule otherwise, we would effectively be declaring that anyone who engages in unarmed wrestling or tussling with another person is acting recklessly with regard to the possibility that serious physical injury will ensue. We do not think that the legislature intended such a result.

For these reasons, we conclude that the evidence presented at Schlosser's trial was legally insufficient to support his conviction for second-degree assault.

*A separate problem: the jury instructions and the prosecutor's final argument as to whether Schlosser acted "recklessly"*

Although we have just explained why the State's evidence was insufficient to support a conviction for second-degree assault, we also wish to point out that, given the prosecutor's final argument to the jury, and given the jury instructions in Schlosser's case, it is quite possible that Schlosser's jury was misled as to what the State had to prove to establish that Schlosser acted "recklessly".

Schlosser's jury was instructed that if an element of a crime requires proof that the defendant acted "recklessly", that element is satisfied if the government proves

that the defendant acted "intentionally". This jury instruction was based on the provisions of AS 11.81.610(c) — but the instruction was not a completely accurate rendering of what this statute means.

The purpose of AS 11.81.610(c) is to clarify that when an element of a crime requires proof that the defendant acted with a particular culpable mental state, the government is allowed to prove that the defendant acted with a more blameworthy culpable mental state than the one specified in the statute.

For instance, if a statute requires proof that the defendant "recklessly" caused a result, that element of the crime is satisfied if the government proves that the defendant "intentionally" caused the result. In other words, if the crime requires proof that the defendant recklessly disregarded the possibility that their conduct would lead to a particular result, this element is satisfied if the government proves that the defendant acted "intentionally" with respect to the specified result — *i.e.*, if the government proves that, rather than merely disregarding the risk that this result would occur, the defendant acted with the conscious objective to cause this result. *See* AS 11.81.900(a)(1) (the definition of "intentionally").

But this rule does *not* allow the government to prove that a defendant acted recklessly with respect to *one* element of the crime by showing that the defendant acted intentionally with respect to *another* element of the crime.

In Schlosser's case, for instance, the charge of second-degree assault required the government to prove that Schlosser acted "recklessly" with respect to the result of "serious physical injury". The government was not allowed to satisfy this burden by proving that Schlosser acted "intentionally" with respect to a *different result* specified in a *different element* of the charges. But in the prosecutor's opening statement, and in her summation to the jury, the prosecutor told the jurors to interpret the jury instruction in exactly this improper manner.

In both her opening statement and in her closing argument, the prosecutor argued — mistakenly — that if Schlosser "intentionally" *broke Pasquariello's grip*, or if Schlosser "intentionally" *tried to escape from custody*, then (as a matter of law) Schlosser necessarily acted "recklessly" with respect to the possibility that Pasquariello would suffer serious physical injury. In making this argument, the prosecutor explicitly relied on the jury instruction we have been discussing — the instruction which told the jurors that when the government must prove that the defendant acted "recklessly", this burden of proof is satisfied by proof that the defendant acted "intentionally".

This argument was improper. Although AS 11.81.610(c) declares that proof of a higher culpable mental state may substitute for proof of a lower culpable mental state, this rule operates only when both culpable mental states are being used in reference to the same element of the crime.

For instance, if the government must prove that a defendant acted "recklessly" with respect to a particular result specified in the definition of the crime, the government is not allowed to prove this element by showing that the defendant acted "intentionally" with respect to some *other* result specified in a different element of the charges. Likewise, if the government must prove that a defendant acted "recklessly" with respect to a particular *circumstance* specified in the definition of the crime, the government is not allowed to prove this element by showing that the defendant acted "knowingly" with respect to some *other* circumstance specified in a different element of the charges.

We caution trial judges to be attentive to this limitation, since it is not expressly spelled out in our criminal pattern jury instructions. And we caution prosecutors not to repeat the type of argument that the prosecutor made in Schlosser's case.

*Schlosser's arguments that the evidence presented at his trial was insufficient to support his convictions for escape and theft*

In addition to challenging the sufficiency of the evidence to support his conviction for second-degree assault, Schlosser also argues that the evidence was insufficient to support his convictions for escape and for the theft of gasoline. More specifically, Schlosser contends that the evidence fails to establish that he was ever placed in "actual restraint" by Sergeant Pasquariello, and that the evidence fails to show that he actually obtained any gasoline through his clandestine syphoning efforts.

Viewing the evidence (and the reasonable inferences to be drawn from it) in the light most favorable to the jury's verdicts, we conclude that fair-minded jurors could find that the State had proved these elements beyond a reasonable doubt. We therefore reject Schlosser's arguments that the evidence was legally insufficient. [2]

*Schlosser's argument that the trial judge committed error by not fully instructing the jury on the law of self-defense*

At Schlosser's trial, his attorney raised the defense of self-defense with regard to the charge of resisting arrest. But when Schlosser's attorney asked the trial judge to give the jurors an instruction detailing the law of self-defense, the judge declined to do so. The judge declared that such an instruction was not needed, since the jury instruction on the elements of resisting arrest already informed the jurors that a person could not use force to resist an arrest unless the officer making the arrest used excessive force.

---

[2] *See, e.g., Eide v. State*, 168 P.3d 499, 500-01 (Alaska App. 2007).

On appeal, Schlosser points out that, because the judge declined to give a separate and more complete instruction on self-defense, the jurors might not have understood certain aspects of the law of self-defense — for instance, the principle that a person can act in self-defense, not only if they are actually being subjected to unlawful force, but also if they honestly and reasonably believe that they are being subjected to unlawful force. The State concedes that Schlosser is right — that Schlosser was entitled to a more complete instruction on self-defense.

However, we conclude that the trial judge's error was harmless. Even without a separate self-defense instruction, Schlosser's attorney was able to argue Schlosser's self-defense claim to the jury — *i.e.*, to argue that Schlosser was authorized to use force to resist Sergeant Pasquariello, and to try to escape from him, because Pasquariello used unreasonable (*i.e.*, excessive) force upon Schlosser.

The defense attorney's argument did not rest on notions of reasonable mistake, or on any of the less familiar aspects of the law of self-defense. Rather, the defense attorney asserted that Schlosser acted to defend himself when Pasquariello subjected him to excessive force. The defense attorney also told the jurors that it was the State's burden to *disprove* (beyond a reasonable doubt) Schlosser's assertion of excessive force. And the prosecutor did not dispute that the State bore this burden of proof.

Given the way Schlosser's case was litigated, we conclude that the trial judge's failure to give the jurors a complete instruction on the law of self-defense was harmless error.

*Schlosser's argument that the trial judge committed error by not giving the jurors more explicit instruction on the legal meaning of "resist arrest" and "substantial risk of physical injury"*

During the jury's deliberations, the jury asked the trial judge for clarification of a phrase used in the instruction defining the elements of resisting arrest. Specifically, the jury asked the judge what was meant by the phrase "resisted arrest by any means that created a substantial risk of physical injury to another person".

When the trial judge received the jury's note, he asked the attorneys how they thought he should proceed. Both attorneys counseled the judge to do nothing. The prosecutor said that this was an issue of fact for the jury to decide, and Schlosser's attorney told the judge, "[J]ust say, 'No more precise definition is possible.' Period." So the judge told the jurors:

> This is a factual determination that must be made by the jury. No more precise definition of this term is available.

Now, on appeal, Schlosser claims that the judge's response to the jury was plain error — that the judge should have given the jurors substantive guidance on the meaning of the phrase "resisted arrest by any means that created a substantial risk of physical injury to another person". More specifically, Schlosser argues that the jurors needed to receive a fuller explanation of what constitutes "resisting arrest" and what constitutes a "substantial risk of physical injury".

We disagree with Schlosser's claim of plain error. First, this is not an instance of plain error; it is an instance of invited error. Schlosser's attorney did not merely fail to object to the wording of the judge's response to the jury. Rather, Schlosser's attorney expressly urged the judge to tell the jurors, "'No more precise definition is possible.' Period." And that is what the judge did.

Moreover, Schlosser's case does not present an instance of clear injustice where we would intervene to correct an invited error. Given the facts of Schlosser's case, there was no reasonable dispute that Schlosser "resisted arrest" as that term is defined in Alaska law. [3] The issue was whether Schlosser was justified in doing so because of the officer's use of excessive force.

And as to whether Schlosser's conduct — pushing Sergeant Pasquariello and wrestling with him — created a substantial risk of physical injury (as opposed to a substantial risk of *serious* physical injury), Schlosser has failed to suggest, even now, how the phrase "substantial risk of physical injury" could have been clarified in a way that might reasonably have led the jury to reach a different verdict.

We therefore reject Schlosser's claim of error.

*Schlosser's argument that the trial judge committed error by not giving the jurors more explicit instruction on the legal meaning of "actual restraint"*

Schlosser raises one more claim on appeal: he contends that the trial judge committed error by not responding to the jury's request for clarification of the term "actual restraint". (Schlosser was charged with escape on the theory that, "having been placed in actual restraint by a peace officer before arrest", Schlosser "removed himself" from that restraint without lawful authority.)

The record of the superior court proceedings indicates that the jury prepared a note asking the judge for clarification of the term "actual restraint". There is nothing in the record to indicate that the trial judge ever responded to this note. Based on this,

---

[3] *See Velarde v. State*, 353 P.3d 355, 358-59 (Alaska App. 2015); *Eide v. State*, 168 P.3d 499, 501-02 (Alaska App. 2007).

Schlosser contends that the trial judge committed error by declining to answer the jury's request.

For two separate reasons, Schlosser has failed to adequately preserve this issue for review.

First, Schlosser has failed to present this Court with a record of the trial court proceedings sufficient to demonstrate the occurrence of the claimed error, and sufficient to allow this Court to review the matter.

It is true that there is nothing in the record of the superior court proceedings to show that the trial judge responded to the jury's note. But there is also nothing in the record to show that the judge ever *received* this note, or that the judge ever made a decision concerning it. As the appellant (*i.e.*, the party challenging the judgement of the trial court), Schlosser has the burden to present this Court with a record that demonstrates the occurrence of the error he claims.[4] The current record does not do that. If Schlosser believed that the record of the trial court proceedings needed to be supplemented or reconstructed to show that the trial judge received the jury's request and declined to answer it, our Appellate Rules gave Schlosser the means of requesting this supplementation or reconstruction.[5] But the current record is not adequate to support Schlosser's claim of error.

Second, Schlosser has failed to adequately brief his claim of error. Even if we assume that the trial judge received the jury's note and decided not to respond to the note, Schlosser's briefs to this Court offer no suggestion as to what sort of answer the judge should have given the jury. Schlosser presents no argument as to how the

---

[4]   *Miscovich v. Tryck*, 875 P.2d 1293, 1304 (Alaska 1994); *Ketchikan Retail Liquor Dealers Ass'n v. Alcoholic Beverage Control Board*, 602 P.2d 434, 438-39 (Alaska 1979); *Natkong v. State*, 925 P.2d 672, 676 (Alaska App. 1996).

[5]   *See* Alaska Appellate Rule 210(i).

everyday definition of "actual restraint" might have been inadequate or misleading to the jurors under the facts of his case, and he offers no suggestion as to how the judge might have explained the term "actual restraint" in a manner that would have materially aided the jurors in understanding this concept.

For these reasons, we conclude that Schlosser has failed to preserve this claim of error.

*Conclusion*

Schlosser's conviction for second-degree assault is REVERSED, but in all other respects the judgement of the superior court is AFFIRMED. The superior court will have to re-sentence Schlosser, and the State may conceivably ask the superior court to enter judgement against Schlosser for fourth-degree assault. We therefore remand this case to the superior court for further proceedings consistent with this opinion.