Christopher R. FALLON, Appellant,

v.

STATE of Alaska, Appellee.

No. A–10120.

Court of Appeals of Alaska.

Jan. 8, 2010.

---

43. *Hooper,* 188 P.3d at 685–87.

*OPINION*

BOLGER, Judge.

Christopher R. Fallon was convicted of driving under the influence and resisting arrest. He argues that he was illegally seized when an Alaska trooper retained his driver's license for several minutes to check on the status of the license, and that the district court should have granted his motion to suppress on that basis. He also challenges his resisting arrest conviction on two grounds. First, he argues that the district court should have granted his motion for judgment of acquittal because the conduct the State alleged amounted to resisting arrest occurred after his arrest was complete. Second, he argues that there was insufficient evidence for the jury to find that he used force to resist arrest. For the reasons discussed below, we reject Fallon's claims and affirm his convictions.

### Facts and proceedings

On the evening of March 11, 2007, Trooper Kyle Carson was on patrol on Kalifornsky Beach Road off the Sterling Highway when he spotted a silver Chevy SUV in the ditch fifteen to twenty feet off the roadway. Another motorist with a pickup truck had hooked a tow strap to the SUV and was getting ready to pull it out of the ditch. Trooper Carson turned on his emergency lights and pulled over to make sure the driver was not injured, and to offer assistance.

Trooper Carson contacted the driver, Fallon, who explained that his tire caught the snow and pulled his vehicle into the ditch. Carson and the driver of the pickup discussed the best way to pull Fallon's vehicle back onto the roadway. Carson then asked Fallon for his driver's license and returned to his patrol car to call dispatch to check on the status of the license.

After dispatch completed the check, Trooper Carson contacted Fallon again to return his license and to ask him if he needed a tow truck because his clutch had overheated. During this discussion, Trooper Carson smelled a mild odor of alcohol, and he noticed that Fallon's speech was "a bit slurred." He asked Fallon if he had consumed alcohol or

Arthur S. Robinson, Robinson & Associates, Soldotna, for the Appellant.

Devoron K. Hill, Assistant District Attorney, Lance E. Joanis, District Attorney, Kenai, and Talis J. Colberg, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and BOLGER, Judges.

medication. Fallon said he was just tired and stressed. After administering a horizontal gaze nystagmus test, Carson concluded that Fallon had been drinking, so he asked Fallon to step out of his vehicle for additional field sobriety tests. Based on the results of those tests, Carson arrested Fallon for driving under the influence. A later breath test showed that his blood alcohol content was .179 percent, more than twice the legal limit.[1]

When Trooper Carson arrested Fallon, he directed him to put his arms behind his back. Fallon initially complied, but then he tensed his arms and pressed them against his back so that Carson could only handcuff one arm. Carson told Fallon several times to relax and stop resisting, but Fallon became verbally belligerent and continued to tense his arms. Trooper Carson was concerned Fallon might assault him, so he walked Fallon back to the patrol car. He also used pepper spray on Fallon, but it had no obvious effect. Fallon pushed himself away from the patrol car, which again made Carson concerned that Fallon would assault him, so he took Fallon to the ground. Carson could still not handcuff Fallon because Fallon kept trying to get up and continued to tense his arms. At this point a motorist stopped, and with the motorist's help Carson was able to get Fallon's second arm handcuffed and to place him in the patrol car.

Fallon was charged with driving under the influence[2] and resisting arrest.[3] Before trial, he moved to suppress the evidence, arguing that he was illegally seized when Carson retained his driver's license and called dispatch. Following an evidentiary hearing, District Court Judge Sharon A.S. Illsley denied the motion.

After the State presented its case, Fallon moved for a judgment of acquittal, arguing that, as a matter of law, the State presented insufficient evidence to convict him of resisting arrest. Magistrate Matthew C. Christian denied that motion, and the jury convicted Fallon of both offenses.

### Discussion

*Was Fallon illegally seized when Carson retained his license?*

■ On appeal, Fallon renews his claim that Trooper Carson illegally detained him without probable cause or reasonable suspicion when he took his driver's license and called dispatch to check on the status of the license. Fallon argues that Judge Illsley erred by not granting his motion to suppress for this reason.

The parties brief this claim as if it hinged on whether Carson's contact with Fallon was a consensual police-citizen encounter that required no reasonable suspicion, or was instead a Fourth Amendment seizure. But Carson contacted Fallon because he had driven his vehicle into a ditch, to see if Fallon was injured or needed other assistance. The more appropriate question, therefore, is whether the stop was a valid community caretaker stop. In *Ozhuwan v. State*,[4] we held that a Fourth Amendment seizure may be justified without reasonable suspicion of criminal activity if the police are validly acting within their community caretaker role—that is, if they are "aware of at least some specific circumstances supporting a reasonable belief that the occupants of a vehicle need assistance."[5]

As already discussed, Carson contacted Fallon to see if he needed help because he had driven off the road and was stuck in a ditch. Fallon had apparently been trying to free his vehicle for some time, because his clutch had overheated. Another motorist had stopped and was preparing to pull Fallon's vehicle out, and the motorist had to block the roadway to do so. Given these circumstances, it was reasonable for Trooper Carson to conclude that he should remain on the scene to alert other drivers to the possible hazard, and to contact a tow truck if efforts to pull Fallon's vehicle out of the ditch failed or if the vehicle was disabled. Indeed, Carson was asking Fallon if he needed a tow

---

1. AS 28.35.030(a)(2).

2. AS 28.35.030(a).

3. AS 11.56.700(a)(1).

4. 786 P.2d 918 (Alaska App. 1990).

5. *Id.* at 922.

truck when he first observed signs that Fallon was intoxicated.

Based on this record, we conclude that the stop was a valid community caretaker stop. Trooper Carson was therefore authorized under AS 28.15.131 to request Fallon's driver's license.[6] By calling dispatch to check on the status of the license, Carson did not unreasonably expand the scope or duration of the stop.[7] Although Fallon testified that he sat in his car for about five minutes waiting for Carson to return his license, the electronic recording of the contact indicates that only three minutes passed between the time Carson asked for, and returned, Fallon's license. Some of this time was occupied pulling Fallon's vehicle back onto the roadway. The restriction on Fallon's freedom of movement was thus minimal and outweighed by the public interest in verifying that Fallon had a legal right to drive—particularly given that Fallon had just driven into a ditch. We therefore find no error in Judge Illsley's decision to deny Fallon's motion to suppress.

*Was Fallon's arrest complete once Carson got one arm in handcuffs?*

■ Fallon next argues that the district court should have granted his motion for judgment of acquittal because the conduct the State alleged amounted to resisting arrest—Fallon's conduct that prevented Trooper Carson from securing his second arm in handcuffs—occurred after his arrest was already complete.

The resisting arrest statute, AS 11.56.700, provides in pertinent part:

(a) A person commits the crime of resisting or interfering with arrest if, knowing that a peace officer is making an arrest, with the intent of preventing the officer from making the arrest, the person resists personal arrest or interferes with the arrest of another[.]

To support his claim that his arrest was complete once one arm was secured in handcuffs, Fallon relies on the common-law definition of arrest we quoted in *Maynard v. State*[8]: "If an officer having authority to make an arrest actually touches his arrestee, for the manifested purpose of apprehending him, the arrest is complete 'although [the officer] does not succeed in stopping or holding [the arrestee] even for an instant.' "[9] We have relied on this definition of arrest in construing the statute defining the crime of escape.[10]

■ But unlike the crime of escape, the offense of resisting arrest does not hinge on defining the precise moment a defendant is under arrest. The offense of resisting arrest contemplates conduct that takes place during the *process* of taking the defendant into custody. This interpretation is consistent with the plain language of the statute: To be guilty of resisting arrest, a person must act with the intent of preventing an officer from "making an arrest."[11] "Making" is generally defined as "the process of being made."[12] This construction is also consistent with Title 12's definition of arrest as "the taking of a person into custody in order that the person

6. *See Marsh v. State*, 838 P.2d 819, 820–21 (Alaska App.1992) (citing AS 28.15.131, which requires motorists to have a driver's license in their possession and to present the license for inspection upon the demand of a peace officer).

7. *Cf. Brown v. State*, 182 P.3d 624, 629 (Alaska App.2008) (citing 4 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 9.3(c) at 378 (4th ed.2004) (noting that a "routine" traffic stop generally encompasses a request for the motorist's driver's license, registration and proof of insurance, and a computer check to verify the validity of these documents); *Clark v. Anchorage*, 112 P.3d 676, 678 (Alaska App.2005) ("[I]t does not unreasonably expand the scope or duration of a valid traffic stop for an officer to prolong the stop to immediately investi-

gate and determine if the driver is entitled to continue to operate the vehicle by checking the status of the driver's license, insurance, and vehicle registration[.]") (internal citations omitted).

8. 652 P.2d 489 (Alaska App.1982).

9. *Id.* at 492 n. 6 (quoting R. Perkins, *Criminal Law* at 500 (2d ed.1969)) (citations omitted in original).

10. *See MacDonald v. State*, 83 P.3d 549, 551 (Alaska App.2004).

11. AS 11.56.700(a).

12. Webster's New World College Dictionary at 868 (4th ed.2002).

may be held to answer for the commission of a crime." [13]

In reaching this conclusion, we also find persuasive the reasoning of the Arizona Court of Appeals in *State v. Mitchell*.[14] In *Mitchell*, the defendant was told he was under arrest for disorderly conduct, but when an officer grabbed his arm to handcuff him he "froze up" and held his hands in front of him.[15] An officer managed to handcuff his arms behind his back, but as the defendant was escorted to the police car he struggled and fought with the officers, wrapping his leg around one officer and pulling everyone to the ground.[16]

Under the Arizona resisting arrest statute, the State had to prove that Mitchell intentionally prevented, or attempted to prevent, the police from "effecting an arrest" by using or threatening to use physical force.[17] Mitchell argued that no reasonable jury could convict him of that offense because his arrest was complete as soon as he was handcuffed, and the State had charged him with resisting arrest based on his subsequent conduct.

The appeals court rejected this claim, ruling that a reasonable jury could find that the officers were still "effecting" Mitchell's arrest when he struggled with the officers en route to the patrol car.[18] The court explained that the term "effecting an arrest" encompassed the process of bringing about an arrest:

> "[E]ffecting an arrest" is a process with a beginning and an end. Often, the process is very brief and the arrest is quickly completed. In some situations, however, the process of "effecting" an arrest will

occur over a period of time and may not be limited to an instantaneous event, such as handcuffing.[19]

As the Arizona court observed, this interpretation comports with the purpose of the resisting arrest statute: protecting the police and citizens from substantial risk of physical injury.[20] That purpose would not be served by criminalizing forceful resistance that precedes the barest touch that effects an arrest for purposes of the escape statute, but not forceful resistance that prevents the officer from completing the arrest by handcuffing the defendant, escorting him to the patrol car, or otherwise "taking [him] into custody." [21]

For these reasons, we find no merit to Fallon's claim that, as a matter of law, his arrest was complete for purposes of the resisting arrest statute as soon as one of his arms was in handcuffs. We therefore uphold Magistrate Christian's decision denying his motion for judgment of acquittal.

*Was there insufficient evidence that Fallon resisted arrest with force?*

 The State charged Fallon under the first subsection of the resisting arrest statute, which makes it illegal to resist arrest by "force." The Alaska Statutes define "force" as "any bodily impact, restraint, or confinement or the threat of imminent bodily impact, restraint, or confinement[.]" [22]

Fallon argues that this case is like *Eide v. State*,[23] where we reversed the defendant's conviction after concluding that his conduct was not resisting arrest but "mere non-sub-

---

**13.** AS 12.25.160.

**14.** 204 Ariz. 216, 62 P.3d 616 (App.2003).

**15.** *Id.* at 617.

**16.** *Id.*

**17.** *Id.* at 618. The statute at issue in *Mitchell*, A.R.S. § 13–2508, provides:

> A person commits resisting arrest by intentionally preventing or attempting to prevent a person reasonably known to him to be a peace officer, acting under color of such peace officer's official authority, from effecting an arrest by:

> 1. Using or threatening to use physical force against the peace officer or another[.]

**18.** *Mitchell,* 62 P.3d at 619.

**19.** *Id.* at 618 (citations omitted).

**20.** *Id.* at 619.

**21.** AS 12.25.160.

**22.** AS 11.81.900(b)(27).

**23.** 168 P.3d 499 (Alaska App.2007).

mission to an arrest." [24] In *Eide,* the defendant was at home on the floor in a sleeping bag when the Alaska troopers tried to arrest him.[25] When a trooper grabbed his arm to pull him up, he jerked away and told the trooper "I ain't going." [26] Then he rolled onto his stomach with his arms underneath him.[27] He submitted to the arrest as soon as the troopers used an electric shocking device on him.[28]

Fallon argues that his conduct in tensing his arms and pressing them against his back was likewise "mere non-submission" to arrest, and that a fair-minded juror could not convict him of resisting arrest by force based on this conduct. But Fallon's conduct differed from Eide's in key respects. Eide initially pulled his arm away from a trooper and put his arms under his body so he could not be handcuffed.[29] But as soon as the troopers used an electric shock device, he submitted to the arrest.[30]

Fallon, by contrast, struggled against Carson's efforts to arrest him: When Carson took Fallon to the back of the patrol car,

Fallon pushed himself away from the car, so that Carson had to take him to the ground. With Fallon in that position, Carson still could not handcuff him, because Fallon tried to get up and continued to tense his arms against his back. Ultimately, it took the help of a passing motorist to get Fallon handcuffed and in the patrol car. Viewing this evidence in the light most favorable to the State, we conclude that this conduct went beyond "mere non-submission to an arrest," and that a fair-minded juror could find beyond a reasonable doubt that Fallon was guilty of resisting arrest by force.[31]

### *Conclusion*

We AFFIRM the judgment of the district court.

**24.** *Id.* at 502. Eide was convicted of resisting arrest under AS 11.56.700(a)(3), which makes it a crime to resist arrest "by any means that created a substantial risk of physical injury to any person." *Id.* at 501. However, the evidence was also insufficient to convict Eide of resisting arrest by force under subsection (1) of the statute. *Id.* at 503–04 (Mannheimer, J., concurring).

**25.** *Eide,* 168 P.3d at 500.

**26.** *Id.*

**27.** *Id.*

**28.** *Id.*

**29.** *Id.*

**30.** *Id.*

**31.** *See Collins v. State,* 977 P.2d 741, 747 (Alaska App.1999); *Dorman v. State,* 622 P.2d 448, 453 (Alaska 1981).