NOTICE

*The text of this opinion can be corrected before the opinion is published in the* <u>Pacific</u> <u>Reporter</u>. *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

TERRY VELARDE,

Appellant,

v.

STATE OF ALASKA,

Appellee.

Court of Appeals No. A-11356
Trial Court No. 3PA-11-435 CR

O P I N I O N

No. 2461 — July 2, 2015

Appeal from the Superior Court, Third Judicial District, Palmer, Vanessa White, Judge.

Appearances: Margi Mock, under contract with the Public Defender Agency, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant. Donald Soderstrom, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for the Appellee.

Before: Mannheimer, Chief Judge, and Allard and Kossler, Judges.

Judge KOSSLER, writing for the Court.
Chief Judge MANNHEIMER, concurring.

Terry Velarde was convicted of felony driving under the influence, driving with a suspended license, failure to stop at the direction of a peace officer, and resisting arrest. On appeal, Velarde raises two claims.

First, Velarde argues that the superior court should have suppressed his breath test result based on trooper interference with his right to an independent chemical test. Specifically, he claims that the trooper interfered with his right to an independent test when the trooper only told him he could have a blood test, not that he could obtain a chemical test other than a blood test. Because we conclude that the trooper did not interfere with Velarde's right to an independent chemical test when he offered Velarde a blood test, we affirm the superior court's denial of his motion to suppress.

Second, Velarde argues that there was insufficient evidence for the jury to find that he used force to resist arrest. Because we conclude that the evidence was sufficient for a jury to find that Velarde actively fought the troopers' effort to arrest him, we affirm his conviction for resisting arrest.

*Facts*

According to the trial testimony, while responding to a report of an underage drinking party at a home in the Mat-Su area in February 2011, Alaska State Troopers contacted Terry Velarde, who had arrived to pick up his son from the party. As Velarde arrived at the home, his vehicle was moving too fast for the slippery conditions and slid in the driveway. Alaska State Trooper Anthony Stariha contacted Velarde and noticed that he had an odor of alcohol, slurred speech, and bloodshot eyes. He also noticed that Velarde had trouble standing. Stariha told Velarde to remain at the scene while he helped break up the party; instead, Velarde drove away. Alaska State Trooper Sergeant Jacob Covey tried to stop Velarde after observing him drive approximately ten miles per hour over the speed limit. Despite places to pull over, Velarde continued to drive until he pulled into a gas station off the Parks Highway.

Velarde got out of his vehicle and went into the bathroom at the gas station, locking himself inside. The station clerk provided a key, and the troopers unlocked the

bathroom door and tried to handcuff Velarde, but he struggled with them. It took several troopers to get Velarde handcuffed and under control.

The troopers transported Velarde to a station for DUI processing. Velarde's breath test result showed a blood-alcohol level of .173 percent. Trooper Stariha read Velarde a notice of his right to an independent chemical test. Velarde at first was interested in an independent test, but after asking several questions about it, he decided not to get one.

The State charged Velarde with felony DUI, driving with a suspended license (DWLS), failure to stop at the direction of an officer, and resisting arrest. Velarde moved to suppress his breath test result, in part arguing that the trooper interfered with his right to an independent chemical test. After an evidentiary hearing, Superior Court Judge Vanessa White denied his motion, finding that the trooper offered to help Velarde obtain a blood test but that Velarde had waived his right to an independent test.

On the morning of trial, Velarde pleaded guilty to DWLS, and the jury subsequently convicted him of the other charges. Velarde appeals his felony DUI and his resisting arrest convictions.

*The trooper did not interfere with Velarde's right to an independent chemical test*

During Velarde's DUI processing, Trooper Stariha read Velarde a form giving him notice of his right to an independent chemical test. During this reading, they had the following exchange:

> *Stariha:* You have four choices here: "[I] do not wish an independent chemical test;" second choice, "I want a blood draw — a blood sample drawn at the government's expense;" third choice is, "I want a chemical test at my own expense to be administered at the location;" third [*sic*] is,

"refuse to decide or sign." Which one of those would you like?

*Velarde:* (indiscernible) get bailed out right now, that's all.

*Stariha:* Well, I'm asking you, do you want a blood test? "I do not wish an independent test," that's one; "I want a blood sample drawn at the government's expense," that's two; "I want a chemical test at my own expense to be administered," that's three; or, "[I] refuse to decide or sign."

*Velarde:* Oh, so how long does it take to get one [for] myself?

*Stariha:* I don't know. Do you want — that's what this is asking. Do you want a bl — independent test?

*Velarde:* I — I can possibly get one, yeah.

*Stariha:* Do you want one?

*Velarde:* Yes.

*Stariha:* You want an independent test?

*Velarde:* Yeah, so — so how's that — how's that work, though?

*Stariha:* Well, if you want an independent test, we'll transport you to Mat-Su Regional Medical Center and we'll get a blood draw.

*Velarde:* Oh. No, I'm not going to get stabbed.

*Stariha:* You — so you don't want a blood test?

*Velarde:* No, I don't want to get stabbed by nobody. No.

*Stariha:* All right.

After the State charged him, Velarde filed a suppression motion, claiming that the trooper interfered with his right to an independent chemical test by not clarifying whether Velarde wanted an independent test other than a blood test.

Relying on AS 28.35.033(e), Judge White ruled that the two options for an independent chemical test were a breath test or a blood test. Because the trooper had offered to transport Velarde to the hospital for a blood test, Judge White found that the government had complied with its duty to offer an independent chemical test and that Velarde had voluntarily waived his right to the test.

On appeal, Velarde argues that Judge White erred in refusing to suppress his breath test result. Velarde contends the trooper violated Velarde's constitutional and statutory rights to an independent chemical test when, in response to Velarde's question about what a chemical test entailed, the trooper only explained the process for obtaining a blood test. Velarde argues that the trooper's response to his questions was incomplete because the trooper did not explain that Velarde could obtain any chemical test of his choosing, not just a blood test. Velarde asserts that he would have obtained a chemical test that did not involve needles had the trooper explained all of his options. In support of his argument, Velarde relies on the language of AS 28.35.033(e) and other related statutes[1] and an Alaska Supreme Court case giving a broad interpretation to the phrase "a chemical test" in one of the implied consent statutes.[2]

Velarde's argument is premised on the assertion that he had the right to an independent chemical test other than a blood test.

The right of an individual arrested for driving under the influence to have an independent chemical test arises from two different sources. The Alaska Constitution provides for the constitutional right to an independent test,[3] and AS 28.35.033(e) provides for the statutory right to an independent test. We first will address Velarde's

---

[1]  *See* AS 28.33.031(a)(2); AS 28.35.031(g).

[2]  *See Anchorage v. Geber*, 592 P.2d 1187, 1191 (Alaska 1979).

[3]  *See Snyder v. State*, 930 P.2d 1274, 1278-79 (Alaska 1996); *Anchorage v. Serrano*, 649 P.2d 256, 259 (Alaska 1982).

claim that the trooper violated his constitutional right to an independent test, and then address Velarde's argument as it relates to the statutory right to an independent test.

The Alaska Supreme Court has held that the government's offer of a blood test — without the option of another type of chemical test — satisfies the constitutional right to an independent chemical test.[4] Thus, Velarde's claim that the trooper interfered with his constitutional right to an independent chemical test by giving him solely the option of a blood test has been squarely rejected by the Alaska Supreme Court.

Velarde's claim that the trooper interfered with his statutory right to an independent chemical test under AS 28.35.033(e) likewise fails.

Prior to 2002, AS 28.35.033(e) stated, in relevant part:

> The person tested may have a physician, or a qualified technician, chemist, registered nurse, or other qualified person of the person's own choosing administer a chemical test in addition to the test administered at the direction of a law enforcement officer.

But in 2002, the legislature amended this statute to include the following language at the end of the subsection:

> The person who administers the chemical test shall clearly and expressly inform the person tested of that person's right to an independent test described under this subsection, and, if the person being tested requests an independent test, the department shall make reasonable and good-faith efforts to assist the person being tested in contacting a person qualified to perform an independent chemical test of the person's breath or blood.

The legislature added the above language in response to the supreme court's decision in *Gundersen v. Anchorage*, 792 P.2d 673 (Alaska 1990). As discussed above, *Gundersen* held that the constitutional right to an independent chemical test is satisfied

---

[4]  *See Gundersen v. Anchorage*, 792 P.2d 673, 677-78 (Alaska 1990).

by the offer of a blood test at government expense. The *Gundersen* court also held that compliance with the statutory right to an independent chemical test will fulfill the constitutional right if the government clearly informs the defendant of his statutory right to an independent test and makes reasonable efforts to help the defendant obtain access to a person qualified to perform an independent test, provided such a test is in fact available.[5]

In response to *Gundersen*, the legislature modified AS 28.35.033(e).[6] As explained above, the statute now provides that the government must advise a person arrested for DUI or refusal of his right to obtain an independent chemical test of his breath or blood and must assist the defendant in obtaining such a test. The legislative history of this amendment shows that the legislature intended to codify the supreme court's holding in *Gundersen*.[7] As mentioned above, the supreme court held that the offer of a blood test without other options fulfills the constitutional right to an independent test. When the legislature amended AS 28.35.033(e), the legislature permitted the government to offer either an independent breath test or an independent blood test.

Here, the trooper explained that Velarde had the right to obtain a blood test and that the trooper was willing to transport Velarde to the local hospital to obtain that test. By offering Velarde an independent blood test, the trooper complied with

---

[5]  *Id.* at 676-77.

[6]  *See* House Judiciary Committee Files, Final Report of the DUI Prevention Task Force, Municipality of Anchorage, at 7 (2000).

[7]  *Id.*; Minutes of House Transportation Committee, H.B. 4, testimony of Rep. Norman Rokeberg, after log no. 2170 (Feb. 22, 2001); Finance Committee Files, Rep. Norman Rokeberg, Work Draft Q Sectional Analysis, at 5 (2002).

AS 28.35.033(e) and did not interfere with Velarde's exercise of his statutory right to an independent test.

We affirm Judge White's denial of Velarde's motion to suppress his breath test result.

*Sufficient evidence supports Velarde's conviction for resisting arrest*

A person commits the crime of resisting arrest under AS 11.56.700(a)(1) if the person uses force to resist an arrest by a police officer, with the intent of preventing the arrest.[8] For the purposes of Velarde's case, "force" is defined as "any bodily impact ... or the threat of imminent bodily impact."[9] Velarde contends that the evidence was insufficient to support the conclusion that he used force to resist his arrest and that the superior court should have granted his motion for a judgment of acquittal on the charge.

In interpreting the resisting arrest statute, we have required proof of more than "passive resistance" or "mere non-submission to an arrest."[10] We have upheld convictions for resisting arrest where the defendant has directed force at an officer with the intent of preventing the arrest or actively struggled against the officer's efforts to arrest him.[11]

---

[8]   AS 11.56.700(a)(1) ("A person commits the crime of resisting or interfering with arrest if, knowing that a peace officer is making an arrest, with the intent of preventing the officer from making the arrest, the person resists personal arrest ... by ... force[.]").

[9]   AS 11.81.900(b)(27) ("'[F]orce' means any bodily impact, restraint, or confinement or the threat of imminent bodily impact, restraint, or confinement, 'force' includes deadly and nondeadly force[.]").

[10]   *See Fallon v. State*, 221 P.3d 1016, 1021 (Alaska App. 2010); *Eide v. State*, 168 P.3d 499, 503 (Alaska App. 2007) (Mannheimer, J., concurring).

[11]   *Id.*; *Alexie v. State*, 2013 WL 1315034, at *2 (Alaska App. Apr. 3, 2013) (unpublished).

In *Fallon v. State*, this Court upheld a resisting arrest conviction based on evidence that

> Fallon ... struggled against [Trooper] Carson's efforts to arrest him[.] When Carson took Fallon to the back of the patrol car, Fallon pushed himself away from the car, so that Carson had to take him to the ground. With Fallon in that position, Carson still could not handcuff him, because Fallon tried to get up and continued to tense his arms against his back. Ultimately, it took the help of a passing motorist to get Fallon handcuffed and in the patrol car.[12]

We concluded that Fallon's conduct "went beyond 'mere non-submission,'" and we upheld Fallon's conviction for resisting arrest by force.[13]

In reviewing a sufficiency of the evidence claim, we view the evidence in the light most favorable to the jury's verdict.[14] We therefore recite the evidence in that light. The evidence in Velarde's case is similar to that of *Fallon*.

At trial, Sergeant Covey testified that after Velarde finally stopped his truck at the gas station on the Parks Highway, he followed Velarde into the station, telling him to stop. Velarde said he was busy and locked himself in the bathroom. When other troopers arrived, they were able to open the bathroom door, but only with the assistance of the store clerk. When the troopers pulled Velarde away from the bathroom sink and tried to put his hands behind his back, Velarde moved his shoulders to keep the troopers from handcuffing him. Two troopers had to force Velarde's hands around to his back to handcuff him. Sergeant Covey then escorted Velarde out of the bathroom and into the hallway. Because Velarde continued to struggle with him, Sergeant Covey put Velarde

---

[12]  *Fallon*, 221 P.3d at 1021.

[13]  *Id.*

[14]  *See Collins v. State*, 977 P.2d 741, 747 (Alaska App. 1999).

against the hallway wall, facing it. Velarde braced his knees against the wall to push his body back against Sergeant Covey. Sergeant Covey told Velarde to stop, and he put Velarde on the floor with a leg sweep to control him. Velarde kept trying to get up from the floor.

Trooper Stariha testified that when he arrived, he saw that Sergeant Covey had Velarde down on the floor and was kneeling on Velarde's back. He testified Velarde "was kicking and trying to get back up," so Trooper Stariha used a leg lock to help get Velarde under control. Together, the troopers were able to subdue Velarde.

As mentioned, we must view the foregoing evidence in the light most favorable to the verdict.[15] Viewing the evidence in this manner, we conclude that a fair-minded juror could reasonably find that Velarde used force directed at the troopers with the intention of preventing his arrest. Accordingly, we affirm Velarde's conviction for this offense.

*Conclusion*

We AFFIRM the judgment of the superior court.

---

[15] *Id.*

Judge MANNHEIMER, concurring.

I write separately to emphasize the question of statutory interpretation that we are deciding here.

The statute that governs a DUI arrestee's right to an independent test, AS 28.35.033(e), declares that if the arrestee requests an independent test, the police are required to make reasonable, good-faith efforts "to assist the [arrestee] in contacting a person qualified to perform an independent chemical test of the [arrestee's] breath or blood."  The question is whether the statute contemplates that the *police* can choose between offering the arrestee a breath test or a blood test — or whether, instead, the statute endows the *arrestee* with the right to choose between these two tests.

As the lead opinion explains, the supreme court held in *Gunderson v. Anchorage* that the police may validly offer the arrestee only one form of independent test, and the arrestee has no right to demand another form of test.  792 P.2d 673, 677-78 (Alaska 1990).  And as the lead opinion further explains, the legislative history of AS 28.35.033(e) shows that this statute was intended to codify the decision in *Gunderson*.

We therefore conclude that, when the statute speaks of an independent test of "breath or blood", the type of independent test is at the option of the police, not the arrestee.